**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
 ------------------------------------------------------------------------------ X

EMILY GALLAGHER, SURAJ PATEL, KATHERINE
STABILE, JILLIAN SANTELLA, AARON SEABRIGHT,
JAMES C. MCNAMEE, KRISTIN SAGE ROCKERMAN,
MARIA BARVA, MIRIAM LAZEWATSKY, MYLES
PETERSON, SAMANTHA PINSKY, CHRISTIAN O'TOOLE,          20 Civ 5504 (AT)
TESS HARKIN, CAITLIN PHUNG, ANTONIO PONTEX-
NUNEZ, *individually, and on behalf of all others similarly*          **INTERVENOR-**
*situated*,                                                            **PLAINTIFFS'**
                                                                      **COMPLAINT**
                              Plaintiffs,

MARIA D.  KAUFER and ETHAN FELDER,

                              Intervenor Plaintiffs

                              v.

NEW YORK STATE BOARD OF ELECTIONS; PETER S.
KOSINSKI, ANDREW SPANO, and DOUGLAS KELLNER,
*individually and in their official capacities as Commissioners of*
*the New York State Board of Elections;* TODD D.
VALENTINE, ROBERT A. BREHM*, individually and in their*
*official capacities as Co- Executive Directors of the New York*
*State Board of Elections; and* ANDREW CUOMO *as Governor*
*of the State of New York*,

                              Defendants.

                              and

NEW YORK CITY BOARD OF ELECTIONS; PATRICIA
ANNE TAYLOR individually and as President of the New York
City Board of Elections; and MICHAEL J. RYAN, individually
and as the Executive Director of the New York City Board of
Elections,

                              Intervenor Defendants
 ------------------------------------------------------------------------------ X

The Intervenor Plaintiffs, for their Complaint, adopt the allegations of the Complaint in

this action, and additionally allege as follows:

**INTRODUCTION**

1.      This action concerns an election law snafu, created by executive order in the middle of a pandemic, that stands to disenfranchise a massive number of voters, without any warning or anything resembling Constitutionally adequate protections. In Queens alone, it is estimated that almost 20% or over 16,000 ballots were invalidated because they lacked a signature; in the 31st Assembly District in Queens out of 2441 absentees returned, 615 were unsigned. Then an additional 20% or more were invalidated for lacking a postmark or because even if postmarked, they arrived after a cutoff date of June 30, 2020.

2.      The problem is simple:

        a.      The United States Postal Service ("USPS") traditionally only postmarks envelopes that have postage on them (in part to prevent postage from being re-used). USPS does *not* traditionally postmark prepaid envelopes.

        b.      Under Governor Cuomo's Executive Order 202.26, New York shifted from a voter- paid absentee voting system (voters applied their own stamps to the envelopes, which would then be postmarked by USPS) to a pre-paid absentee voting system (voters do not apply stamps to envelopes, and the USPS would therefore *not* postmark the envelopes).[1]

        c.      NY Elec. L. §8-412 requires[2] that absentee ballots to "show[] a cancellation mark of the United States Postal Service or a foreign country's postal service, or showing a dated endorsement of receipt by another agency of the United States government, with a date which is ascertained to be not later than the day of the election."

---

[1] That is, envelopes that state "NO POSTAGE NECESSARY IF MAILED IN THE UNITED STATES" and "POSTAGE WILL BE PAID BY THE ADDRESSEE."

[2] Technically speaking, §8-412 provides that a "board of elections **shall** cause all absentee ballots" with a postmark "to be cast and counted," but contains corresponding no limit on the discretion to count other ballots. *Id* (emphasis added). That said, since the Board has interpreted the law to include an implied "shall not," this suit will take the point as given.

3.      The net effect is that thousands of voters will simply have their votes discarded, because they did not know to demand USPS step outside of its normal procedures and stamp their ballots (or indeed, did not know that they should not drop the ballots in a corner mailbox).

4.      The right to vote is a "precious" and "fundamental" right. *Harper v. Va. State Bd. of Elections,* 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); *see also Yick Wo v. Hopkins,* 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (finding that the right to vote is "preservative of all rights"). " 'The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise.' " *League of Women Voters v. Brunner,* 548 F.3d 463, 477 (6th Cir.2008) (quoting *Bush v. Gore,* 531 U.S. 98, 104, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000)).

5.      Not only can the right to vote not be denied outright, it cannot be destroyed by alteration of ballots, *see United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), or diluted by stuffing of the ballot box, *see United States v. Saylor*, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341 (1985). "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined. *Wesberry v. Sanders*, 84 S.Ct. 526, 535, 376 U.S. 1, 17 (1964).

6.      Yet, the Board of Elections would simply throw out thousands of ballots as a cost of doing business.

7.      This action primarily seeks what might be construed as two kinds of relief: first, emergency relief relating to the counting of votes currently going on with regard to the June 23,

2020 election – whose result will be certified on or about August 3, 2020 – and second, relief looking forward to any other election conducted under Executive Order 202.26. In both cases, however, the relief itself is straightforward: count every ballot received before the already-existing cut-off (e.g., June 30 for the June 23 election), regardless of whether the USPS happens to have disregarded its long-standing practice in order to specially stamp the ballot.

## JURISDICTION AND VENUE

8.      This Court has federal question jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. § 1331.

9.      Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and§ 2202.

10.     The Court has ancillary jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

11.     Venue is also proper in this district because the Intervenor Defendants' principal place of business in this District.

## PARTIES IN INTERVENTION

12.     Plaintiff-Intervenor Maria D. Kaufer is a registered Democrat in Queens County, residing in Forest Hills, New York and is a candidate on the ballot in the Female Democratic District Leader for Part A of the 28th Assembly District, and is a voter.

13.     Plaintiff- Intervenor Ethan Felder is a registered Democrat in Queens County, residing in Forest Hills, and is a candidate on the ballot in the Democratic Primary for Male Democratic District Leader for Part A of the 28th Assembly District, and is a voter.

14.     Defendant in Intervention NY City Board of Elections ("NYCBOE") is the bipartisan agency vested with the responsibility for administration and enforcement of all laws relating to elections in all 5 counties in New York City. It is an administrative body of ten

Commissioners, two from each borough upon recommendation by both political parties and then appointed by the New York City Council for a term of four years. Defendant in Intervention Patricia Anne Taylor is President of the NYCBOE and is sued individually and in her official capacity.

15.     Defendant in Intervention Michael J. Ryan is the Executive Director of the NYCBOE and is sued individually and in his official capacity.

### STATEMENT OF FACTS

16.     Under  Election Law § 3-200,  the NYCBOE is responsible for

 a)   Conducting fair and honest elections, from local to federal levels: the preparation of the ballot for primary, special, and general elections to the extent that all vacancies for public office and party positions may be filled.

 b)   Enfranchising all eligible New Yorkers to register to vote and to practice those rights: that qualified voters may exercise their right to franchise and that every opportunity be given to voters to execute that right and to vote for whom they choose.

 c)   Conducting elections, certify[ing] the canvass and … retain[ing] the official records: [and assuring] that the votes of the electorate at primary, special and general elections … [are] properly canvassed and that a true count … [is] given for each candidate voted for.

17.     The NY State Board of Elections (NYSBOE) and the NYCBOE, have created what Defendant Kellner described as "partnership" with the United States Postal Service ("USPS") "for conducting the election."[3] That "partnership" has involved extensive

---

[3] https://gothamist.com/news/heres-what-could-invalidate-your-absentee-ballot-and-its-beyond-your- control
("Gothamist").

coordination, and extensive communication, as described in reporting in the Gothamist (*see footnote 3*).

18.     In that partnership, USPS acts as an agent for the Board, and its acts and omissions can be attributed to the Board because through that partnership, the USPS's policies and practices have been approved and ratified by the Board. *Cf. Monell v. Department of Social Services*, 436 U.S. 658 (1978).

**Background and Facts on Absentee Ballots.**

19.     In April and May of 2020, and in light of the ongoing pandemic, Governor Cuomo issued four relevant executive order concerning the use of absentee voting for upcoming elections. See N.Y. Exec. Order No. 202.15 (Apr. 9, 2020); N.Y. Exec. Order No. 202.23 (Apr. 24, 2020); N.Y. Exec. Order No. 202.26 (May 1, 2020); and N.Y. Exec. Order No. 202.28 (May 7, 2020). Of these:

        a.     Executive Order 202.15 permitted voters affected by COVID-19, including those who are at risk of contracting COVID-19, to check the box "Temporary Illness" as the reason for requesting an absentee ballot in connection with the June 23, 2020 primary election. N.Y. Exec. Order No. 202.15, at 3 (Apr. 9, 2020).

        b.     Executive Order 202.23 required County Boards of Elections to send absentee ballot applications to all eligible voters.

        c.     Executive Order 202.28 addressed other issues relating to absentee ballot eligibility.

        d.     And, most relevantly to this case, Executive Order 202.26 "modified [N.Y. Elec. L. § 8-406] to the extent that any absentee ballot sent to a voter for a primary or special election to be held on June 23, 2020 shall be provided with a postage paid return envelope."

20.     Prior to N.Y. Exec. Order No. 202.26, however, absentee ballots sent to voters did not indicate they could be sent without postage, and the Board generally instructed voters to attach postage to their ballots.[4]

21.     Thus, Executive Order 202.26 created a situation that never existed before: USPS's national, general policy and practice would be to **not** stamp absentee ballots with a postmark, since there would be no stamp that needed to be cancelled.

22.     Because of the new, general availability of absentee ballots, Board officials became overwhelmed with the record setting applications for absentee ballots. In New York City alone, more than 750,000 absentee applications were received.[5]

23.     However, despite the fact that the NYCBOE was sending out ballots as late as June 19, 2020 for the June 23rd Primary  there were widespread complaints of ballots never arriving and many arriving late.[6] Nonetheless, ultimately an unprecedented number of New Yorkers cast their votes by absentee ballot, an achievement that should be celebrated.

24.     In terms of the absentee voting process, once a county board approves a voter's request to vote absentee, the board mails the voter the ballot(s) and return envelope. N.Y. Elec. Law § 8-406.

25.     The voter is instructed to mark the absentee ballot, enclose it in the provided return envelope, and seal the envelope – which, under N.Y. Exec. Order No. 202.28, indicates "NO POSTAGE NECESSARY IF MAILED IN THE UNITED STATES" and "POSTAGE WILL BE PAID BY THE ADDRESSEE"

---

[4] https://www.propublica.org/article/mail-in-ballot-postage-becomes-a-surprising-and-unnecessary-cause- of-voter-anxiety

[5] https://www.vote.nyc/page/absentee-ballot-totals

[6] https://www.nytimes.com/2020/06/19/us/politics/nyc-vote-by-mail.html (*Vote-by-Mail Ballot Requests Overwhelm New York City Elections Agency)*

26.     Public promotional materials and voter guides, and the ballot itself created by the NYCBOE instructed voters that this cycle that there was no need to affix postage to their ballots – again, a departure from prior practice.

27.     On June 7, 2020, Governor Cuomo signed legislation (S.8130-D/A.10516-A) extending the deadline to submit absentee ballots until the day of the election to June 23, 2020 given the concerns of late arriving ballots. The requirement for a postmark, despite Governor Cuomo's Exec. Order No. 202.26 virtually ensuring that no postmark would be on many ballots, was left untouched.

28.     Thus, N.Y. Elec. L. § 8-412, for the purposes of the June 23 election, provides:

> The board of elections shall cause all absentee ballots received by it before the close of the polls on election day and all ballots contained in envelopes showing a cancellation mark of the United States postal service or a foreign country's postal service, or showing a dated endorsement of receipt by another agency of the United States government, with a date which is ascertained to be not later than the day of the election and received by such board of elections not later than seven days following the day of election to be cast and counted.

29.     In other words, the new law both requires (1) postmarks from election day or earlier *and* (2) receipt of the ballot by the Board of Elections by (in the present election cycle) June 30. Though the June 30, 2020 deadline could establish proof of timely mailing, the postmark requirement remained in place.

30.     Section 1.13 of the US Postal Service Handbook (https://about.usps.com/handbooks/po408/ch1_003.htm ) states that: **"**A postmark is an official Postal Service™ imprint applied in black ink on the address side of a stamped mailpiece. A postmark indicates the location and date the Postal Service accepted custody of a mailpiece, and it cancels affixed postage. Since 1979, the Postal Service's *Postal Operations Manual* (POM) has provided standards for postmarks applied to single-piece First-Class Mail. Letters and flats

that need to be postmarked come from carrier pick-up, collection boxes, retail counters, or lobby drop boxes. **Postmarks are not required for mailings bearing a permit, meter, or precanceled stamp for postage,** nor to pieces with an indicia applied by various postage evidencing systems. " (Emphasis added)

31.     Upon information and belief, it has only been at the request of the Board that any USPS location postmarked ballots at all, a process that involved much "back and forth" and ultimately involved USPS confirming that it "would ensure election mail was postmarked, even though it was postage paid" and providing nominal "assurance that any ballot envelopes run through their automated machines would receive the necessary marking." *See,* Gothamist, *supra*, note 4.

32.     As Defendant Kellner has admitted, even in the coordination that the Board *did* engage in with the USPS "there were complaints [that] the postmark problem was never resolved. "For example, as set out in the Gothamist's reporting (*supra* n.3), upon information and belief, the USPS location in Rosedale, Queens did not place postmarks on any absentee ballots, instead informing even those voters who asked for postmarks and demanded to speak to supervisors that "[USPS] did not postmark business reply postage paid envelopes, like the ones mailed in this election."

**The June 23, 2020 Primary Election and Counting Ballots.**

33.     Because of the unprecedented volume of absentee ballot requests, some voters, did not receive a ballot until June 23 in the mail. Although put in a postal receptacle on June 23rd such ballots may have been postmarked later or were not postmarked at all.

34.     In the Female Democratic District Leader race, between Plaintiff Maria Kaufer and incumbent Karen Koslowitz, in the 28th Assembly District, Part A, the in-person tabulation on June 23 showed the following:

> Maria Kaufer: 1,115 votes
> Karen Koslowitz: 1,050 votes
> Write-in: 7 votes
> Total in-person: 2,172 votes

35.     The paper ballots, absentee, affidavit ballots and military ballots were counted between July 8 and Jul 18, 2020. Those results were as follows:

> Maria Kaufer: 1,280 votes
> Karen Koslowitz: 1,458 votes
> Write-in: 1 vote
> Over Votes: 2 votes
> Under Votes: 276
> Total Paper Ballot: 3,017 votes

36.     The combined uncertified totals are as follows:

> Maria Kaufer: 2,395 votes (46.16%)
> Karen Koslowitz K: 2,508 votes (48.33%)
> Write-in: 8 votes
> Over Votes: 2 votes
> Under Votes: 276 votes
> Total Votes: 5,189.

37.     This put Karen Koslowitz ahead by 123 votes. However, the NYCBOE did not count 1450 absentee ballots for among other reasons the lack of a postmark.

38.     Upon information and belief,  the principal reason these 1450 ballots, all of which had been received by June 30, were not counted was the lack of a postmark. **This amounts to 21% of the votes cast by absentee ballot.** Intervenor Plaintiffs were present to observe the count and asked to examine the envelopes that were disqualified. They were denied that opportunity despite the fact that the NY State Election Law expressly allows candidate observers and NYCBOE Procedures allow observers to request to inspect disqualified absentee ballots. See email exchange between Arthur Schwartz and NYCBOE General Counsel Steve Richman annexed as Exhibit A.

39.     According to Defendant Kellner, "Several commissioners were reporting that they got large batches of envelopes with voted absentee ballots without any postmarks." *See,* Gothamist, *supra*, note 3.

40.     If allowed to throw out the 1450 ballots discussed above, as appears to be NYCBOE's intent, the NYCBOE will disenfranchise 1450 voters in the 28th Assembly District Part A, possibly including both Intervenor-Plaintiffs, for reasons beyond those voters' control. This is being done despite the fact that NYCBOE is aware of Postal Rules which do not require the placement of postmarks on Business Reply Mail.

## <u>COUNT I</u>

*(42 U.S.C. § 1983: First Amendment Right to Vote; New York State Constitution Art. II)*

41.     Intervenor-Plaintiffs incorporate by reference all of the allegations above.

42.     The right to vote is *the* "fundamental political right, because [it is] preservative of all rights." *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886). "Undoubtedly, the right of suffrage is a fundamental matter in a free and democratic society." *Reynolds v. Sims*, 377 U.S. 533, 561- 62 (1964).

43.     When a case "call[s] upon" the Court "to consider the constitutionality of [an election restriction] as applied[,] … [t]here is no 'litmus-paper test' to answer th[e] question" of constitutionality. *Yang v. Kosinski*, 960 F3d 119, 129 (2d Cir. 2020) (cleaned up), *quoting Anderson v. Celebrezze*, 460 U.S. 780, 789, (1983). Rather, the Court "conduct[s] a two-step inquiry that applies to election-related restrictions." *Id*. In the first stage, the Court evaluates the burden the restriction places on voters and in the second applies the "*Anderson-Burdick* balancing test" if the restriction is reasonable and nondiscriminatory and "the more familiar test of 'strict scrutiny'" if the restriction is severe. *Id*.

44.     The burden on voters of having their votes simply tossed aside is severe, and therefore requires strict scrutiny.

45.     Defendants in Intervention have unquestionably not used the least restrictive means of achieving whatever government interest they offer, and therefore automatically fail strict scrutiny.

46.     However, under either level of review, the restrictions at issue here (e.g., requiring a postmark on a ballot but distributing ballots that will likely not be postmarked by the USPS) do not sufficiently advance any government interest to pass muster.

47.     First, the NYCBOE's official statements make clear that – as the Board has stated – in their own view, *no* government interest is advanced by the postmark requirement at all. Its just a rule that they insist on following.

48.     Second, any government interest served by the restriction is already well-served by other (non-restrictive) parts of the Election Law, to the point where the restriction fails to *additionally* further whatever government interest is claimed. For example, Any state interest in assuring timely voting is already well-served by the June 30 hard stop *also* contained in NY Elec. L. §8-412 (stating boards of election should only count ballots "received by such board of elections not later than seven days following the day of election"). Any *additional* assurance of timeliness is far outweighed by the significant burden on voters involved in simply tossing out more than **21% of absentee ballot votes in the 28th Assembly District Part A.**

49.     Finally, as the Board's official statements seem to concede, any balancing of the state interest against its burden decidedly tips in favor of *not* disenfranchising voters.

50.     Thus, as applied, the postmark requirement in conjunction with N.Y. Exec. Order No. 202.26 unduly burden the right to vote.

## COUNT II

### *(42 U.S.C. § 1983: Equal Protection and One Person, One Vote and related New York State Constitutional Provisions)*

51.     Intervenor-Plaintiffs incorporate by reference all of the allegations above.

52.     The principle of "one person, one vote" requires that courts seek to "[e]nsure that each person's vote counts as much, insofar as it [i]s practicable, as any other person's." *Hadley Junior Coll. Dist. of Metro. Kan. City*, 397 U.S. 50, 54 (1970).

53.     The Equal Protection Clause of the Fourteenth Amendment requires "that all persons similarly situated [] be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

54.     Indeed, "[a]n early case in our one person, one vote jurisprudence arose when a State accorded arbitrary and disparate treatment to voters in its different counties [and t]he [Supreme] Court found a constitutional violation." *Bush v. Gore*, 531 U.S. 98, 107 (2000), *describing Gray v. Sanders*, 372 U.S. 368, (1963).

55.     In the absence of statewide – and indeed, nationwide – consistency in how the USPS handles ballots, the NY Elec. L. §8-412 postmark requirement subjects absentee voters to arbitrary differences in the way their ballots are counted depending on where they reside and, in some circumstances, depending on who happens to be collecting mail.

56.     As discussed above, voters' absentee ballots will be counted or not counted with lightning-like randomness: depending on what their local USPS office was doing with election mail, two voters could cast identical ballots, at exactly the same time, on the same day, and yet one ballot would be counted and one would not.

57.     And, even in the presence of full information (something Intervenor-Plaintiffs and those similarly situated did not have), the burden of handling this randomness would fall much

more heavily on people with significant health risks or other factors making the risk of voting in person during a pandemic more severe.

58.     Thus, as applied, the postmark requirement in conjunction with N.Y. Exec. Order No. 202.26 violates the Constitution's promise of Equal Protection and its promise of fundamental due process.

## COUNT III

*(42 U.S.C. § 1983: Due Process and related New York State Constitutional Provisions)*

59.     Intervenor-Plaintiffs incorporate by reference all of the allegations above.

60.     As alleged above, Defendants in Intervention have given Intervenor Plaintiffs numerous assurances that their votes would be counted if they simply dropped absentee ballots in a USPS box by June 23, 2020.

61.     More specifically, and misleadingly given the positions they are now taking, Defendants In Intervention assured voters in the 28th Assembly District Part A that there was no need to affix, or benefit to affixing, postage to an absentee ballot; and that absentee ballots could be placed in a mailbox up through June 23.

62.     Just as, "[w]hen a candidate relies on the Board of Elections for procedural guidance, that candidate may have a viable due process claim if he is excluded from the ballot because of errors resulting from his reasonable reliance on the Board," a voter so relying also has their due process rights violated. *Farrell v. Bd. Of Elections in NY*, 1985 US Dist LEXIS 16669, at *5, n 1 (SDNY Aug. 20, 1985), No. 85 Civ. 6099 (JES).

63.     And similarly, courts have long excused errors introduced in the voting process, that technically would render some document as having "a fatal defect," where those errors are created by the Board of Elections. *Green v DiNapoli*, 96 NY2d 910, 912 (2001).

64.    As a result, to throw out the ballots of 1450 voters in the 28th Assembly District Part A (which may include Intervenor Plaintiffs) would be to violate their due process rights under the Fourteenth Amendment and corresponding portions of the New York State Constitution.

**WHEREFORE**, Intervenor-Plaintiffs respectfully requests that this Court:

(a)    Issue a declaratory judgment that NYCBOE's, Patricia Anne Taylor's and Michael J. Ryan's  actions have violated Intervenor-Plaintiffs free speech, equal protection, and due process right under the Federal and New York State Constitutions;

(b)    Enter an order requiring NYCBOE to ensure that each and every absentee ballot cast by a 28th Assembly District Part A voter received on or before June 30, 2020;

(c)    Grant Intervenor-Plaintiffs their attorney's fees, costs, and litigation expenses pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12133;

(d)    Grant any other and further relief that the Court may determine to be necessary and proper

Dated:  New York, New York
        July 22, 2020

ADVOCATES FOR JUSTICE
CHARTERED ATTORNEYS
*Attorneys for Intervenor Plaintiffs*


By: /s/ *Arthur Z. Schwartz*
Arthur Z. Schwartz
225 Broadway, Suite 1902
New York, New York 10007
Tel.:  (212) 285-1400
Fax:  (212) 285-1410
aschwartz@afjlaw.com

## **VERIFICATION**

Arthur Z. Schwartz declares under penalty of perjury, that he has read the Proposed Intervenors' Complaint, that as a Democratic Party District Leader in New York County and Election Law Counsel to the Intervenor Plaintiffs since March 2020, and as an observer at the Queens County absentee ballot count, I have personal knowledge of all facts set forth in the Proposed Intervenors' Complaint, and that the same is true to my knowledge

Dated: July 22, 2020

/s/ *Arthur Z. Schwartz*
Arthur Z. Schwartz