UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Emily Gallagher, Suraj Patel, Katherine Stabile, Jillian Santella, Aaron Seabright, James C. McNamee, Kristin Sage Rockerman, Maria Barva, Miriam Lazewatsky, Myles Peterson, Samantha Pinsky, Christian O'Toole, Tess Harkin, Caitlin Phung, Antonio Pontex-Nunez, *individually, and on behalf of all others similarly situated*,

*Plaintiffs*,

- against -

New York State Board of Elections; Peter S. Kosinski, Andrew Spano, and Douglas Kellner, *individually and in their official capacities as Commissioners of the New York State Board of Elections*; Todd D. Valentine, Robert A. Brehm, *individually and in their official capacities as Co-Executive Directors of the New York State Board of Elections*; and Andrew Cuomo *as Governor of the State of New York*,

*Defendants*.

Case No. 1:20-CV-05504 (AT)

---

## STATE DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

LETITIA JAMES
Attorney General
State of New York
28 Liberty Street
New York, New York 10005
Tel: (212) 416-6382

*Attorney for State Defendants*

OWEN T. CONROY
Assistant Attorney General
 *Of Counsel*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND .................................................................................... 4

STANDARD OF REVIEW ...................................................................................... 7

ARGUMENT ............................................................................................................ 8

I.      PLAINTIFFS HAVE SUED THE WRONG PARTIES ................................ 8

II.     CLAIMS AGAINST THE STATE BOARD AND STATE LAW CLAIMS ARE
BARRED BY SOVEREIGN IMMUNITY ............................................................. 10

III.    PLAINTIFFS HAVE NOT ESTABLISHED A CLEAR LIKELIHOOD OF SUCCESS
ON THE MERITS .................................................................................................. 10

    A.    Plaintiffs Have Not Established a Clear Likelihood of Success on their First
Amendment Claim. .......................................................................................... 11

    B.    Plaintiffs Have Not Established a Clear Likelihood of Success on their Equal
Protection Claim ............................................................................................... 17

    C.    Plaintiffs Have Not Established a Clear Likelihood of Success on their Due Process
Claim ................................................................................................................. 18

    D.    The Plaintiffs-Candidates Lack Standing and Are Pursuing Adequate State Court
Remedies ........................................................................................................... 20

IV.     PLAINTIFFS HAVE NOT DEMONSTRATED IRREPARABLE HARM ..................... 22

V.      THE PUBLIC INTEREST WEIGHS AGAINST CHANGING THE RULES FOR AN
ELECTION THAT HAS ALREADY OCCURRED ................................................. 23

VI.     THE STATE DEFENDANTS DO NOT OPPOSE THE MOTION TO INTERVENE TO
THE EXTENT IT SEEKS TO ASSERT CLAIMS AGAINST THE NEW YORK CITY BOARD
OF ELECTIONS ..................................................................................................... 24

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Celebrezze*,
    460 U.S. 780 (1983)....................................................................................................11

*Brooklyn Brands LLC v. Lieberman*,
    No. 18-CV-7245 (LDH), 2018 WL 10246003 (E.D.N.Y. Dec. 23, 2018) .............................21

*Burdick v. Takushi*,
    504 U.S. 428 (1992)....................................................................................................11

*Elmsford Apartment Assocs., LLC v. Cuomo*,
    No. 20-CV-4062 (CM), 2020 WL 3498456 (S.D.N.Y. June 29, 2020) ...................................8

*Ex Parte Young*,
    209 U.S. 123 (1908)......................................................................................................8

*Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*,
    841 F.3d 133 (2d Cir. 2016).........................................................................................7

*Gallagher v. New York City Board of Elections*,
    Index No. 700012/2020 (Sup. Ct. Kings Cty.) .........................................................21

*In re Khan*,
    No. 10-46901-ESS, 2014 WL 10474969 (E.D.N.Y. Dec. 24, 2014)........................9

*Kelly v. New York Civil Serv. Comm'n*,
    632 F. App'x 17 (2d Cir. 2016) ...........................................................................8, 10

*Majorica, S.A. v. R.H. Macy & Co.*,
    762 F.2d 7 (2d Cir. 1985)...........................................................................................21

*Make the Rd. New York v. Cuccinelli*,
    419 F. Supp. 3d 647 (S.D.N.Y. 2019).....................................................................22

*Murray v. Cuomo*,
    No. 1:20-CV-03571-MKV, 2020 WL 2521449 (S.D.N.Y. May 18, 2020).......................7, 21

*New York ex rel. Schneiderman v. Actavis PLC*,
    787 F.3d 638 (2d Cir. 2015).........................................................................................7

*Papasan v. Allain*,
    478 U.S. 265 (1986).....................................................................................................10

*Patel v. Maloney, et al.*,
    Index No. 154624/2020 (Sup. Ct. N.Y. Cty.) ........................................................21

*Pennhurst State School & Hospital v. Halderman*,
    465 U.S. 89 (1984)......................................................................................................10

*Price v. New York State Bd. of Elections*,
    540 F.3d 101 (2d Cir. 2008)........................................................................................11

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*,
    140 S. Ct. 1205 (2020) (per curiam) ...................................................................16, 22

*Reynolds v. Giuliani*,
    506 F.3d 183 (2d Cir. 2007)..........................................................................................8

*Rivera-Powell v. N.Y. City Bd. of Elections*,
    470 F.3d 458 (2d Cir.2006).........................................................................................17

*Seminole Tribe of Florida v. Florida*,
    517 U.S. 44 (1996)......................................................................................................10

*Shannon v. Jacobowitz*,
    394 F.3d 90 (2d Cir. 2005).............................................................................. 14, 18-19

*Spargo v. New York State Comm'n on Judicial Conduct*,
    351 F.3d 65 (2d Cir. 2003)..........................................................................................21

*Spokeo, Inc. v. Robins*,
    136 S. Ct. 1540 (2016)................................................................................................20

*Thurman v. Bun Bun Music*,
    No. 13-cv-5194 (CM) (MHD), 2015 WL 2168134 (S.D.N.Y. May 7, 2015) ...........8

*Tiraco v. New York State Bd. of Elections*,
    963 F. Supp. 2d 184 (E.D.N.Y. 2013) ................................................................. 16-17

*Yang v. Kellner*,
    No. 20-cv-3325 (AT), 2020 WL 2129597 (S.D.N.Y. May 5, 2020), *aff'd sub*
    *nom. Yang v. Kosinski*, 805 F. App'x 63 (2d Cir. 2020)....................................10, 23

## CONSTITUTIONAL PROVISIONS

Eleventh Amendment........................................................................................................10

First Amendment ....................................................................................................... *passim*

Fourteenth Amendment ...............................................................................................11, 18

**STATE STATUTES**

New York Election Law
    § 8-406 ...................................................................................................................2
    § 8-412 ............................................................................................... *passim*
    § 9-202 ...................................................................................................................4

**STATE EXECUTIVE ORDERS**

Executive Order 202.26 ........................................................................ 2, 13-14, 22

**RULES**

Fed. R. Civ. P. 4 ....................................................................................................1

Fed. R. Civ. P. 19 ..................................................................................................9

Fed. R. Civ. P. 24(b)(1)(B) ..................................................................................24

Fed. R. Civ. P. 65 ..................................................................................................1

**MISCELLANEOUS AUTHORITIES**

Bill Mahoney, *Lentol concedes to Gallagher*, Politico (July 22, 2020) .......................................21

National Conference of State Legislatures, Voting Outside the Polling Place
    Report: Table 11: Receipt and Postmark Deadlines for Absentee Ballots .............................12

National Conference of State Legislatures, Voting Outside the Polling Place
    Report: Table 12: States With Postage-Paid Election Mail .....................................14

USPS Postmarking Guidelines: Fact Sheet for Election Mail .........................................2

Defendants New York State Board of Elections ("State Board"); State Board Commissioners Peter S. Kosinski, Andrew Spano, and Douglas Kellner; State Board Co-Executive Directors Todd D. Valentine and Robert A. Brehm ("State Board Defendants"); and Governor Andrew Cuomo (collectively, "State Defendants"), respectfully submit this memorandum of law, together with the Declaration of Robert A. Brehm, dated July 22, 2020 ("Brehm Decl."), in opposition to Plaintiffs' request for emergency relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.[1] Additionally, pursuant to the Court's Order dated July 22, 2020, (ECF No. 13), this memorandum in opposition also includes the State Defendants' response to the to the motion to intervene by two Proposed Plaintiff-Intervenors, (ECF No. 11), as set forth in Point VI below.

**PRELIMINARY STATEMENT**

Pursuant to New York Election Law § 8-412, absentee ballots must either: (1) be received by the voter's local board of elections before the close of polls on election day, or (2) if received by the voter's local board of elections within seven days of election day, be enclosed in an envelope postmarked on or before election day. This neutral, longstanding rule is designed to protect the integrity of New York's elections by ensuring that all voters cast their ballot by the close of the polls on election day. Plaintiffs ask the Court to retroactively change these rules for an election that has already occurred, based on their fundamental misunderstanding about how the United States Postal Service ("USPS") applies postmarks to postage prepaid envelopes.

---

[1] As of the filing of this brief, Plaintiffs have not served the State Defendants with the summons and complaint in the manner prescribed by Fed. R. Civ. P. 4. Plaintiffs have provided copies of the summons and complaint and motion papers via email. While Judge Ramos endorsed Plaintiffs' July 17, 2020 letter that contained a request to serve the State Defendants "by reliable electronic means," the Court's order did not expressly address that request. ECF No. 6.

Plaintiffs' categorical misunderstanding of existing USPS postmarking guidelines is fatal to their claims against the State Defendants.

Given the ongoing COVID-19 pandemic and heightened need for access to absentee voting in New York's June 23, 2020 primary election, ("June 2020 Primary"), Governor Cuomo issued a series of Executive Orders in the Spring of 2020 that modified the New York Election Law so to expand access to absentee voting. One such measure, contained in Executive Order 202.26 (May 1, 2020), modified New York Election Law § 8-406 to require that local boards of election provide postage paid return envelopes along with absentee ballot materials sent to voters for the June 2020 Primary.

Plaintiffs claim that Executive Order 202.26, which on its face made it *easier* for New Yorkers to vote by absentee ballot, accidentally created an "election law snafu" because USPS allegedly "does *not* traditionally postmark prepaid envelopes," and voters who used the prepaid envelopes would therefore "have their votes discarded" unless they "demand[ed that] USPS step outside of its normal procedures and stamp their ballot . . . ." Compl. ¶¶ 1-2 (emphasis in original). This claim is false. Since in or around March 2014, USPS policy has been to automatically postmark all pieces of mail that conform to certain USPS guidelines regarding envelope size and shape, regardless of whether postage is prepaid.[2] The State Board worked with USPS to ensure that the prepaid envelopes provided to voters by local boards of election for the June 2020 Primary followed those guidelines and would automatically receive a postmark upon receipt by USPS. There was therefore no "snafu" by the State Defendants that could give rise to

---

[2] *See* USPS Postmarking Guidelines: Fact Sheet for Election Mail, attached hereto as Brehm Decl. Ex. 3. The USPS election mail guidelines are also publicly posted at https://about.usps.com/kits/kit600.pdf#page=25 and https://about.usps.com/election-mail/election-mail-resources.htm.

Plaintiffs' claims or that could be corrected by the extraordinary emergency relief sought by the instant motion.

Plaintiffs' motion for emergency relief should be denied for five independent reasons.

First, Plaintiffs have sued the wrong parties. *See* Point I, *infra*. There is no well-pled allegation of any act or omission by the State Defendants that violates Plaintiffs' constitutional rights. To the extent that their claim is that USPS employees injured them by failing to postmark certain absentee ballot envelopes in contravention of existing USPS guidelines, such a claim does not lie as against the State Defendants. Furthermore, the State Defendants have no role whatsoever in the counting of individual ballots, which pursuant to New York Election Law is exclusively accomplished by local boards of elections. All Plaintiffs reside in New York City, and the New York City Board of Elections is therefore a necessary party to resolve their demand that the Court order the ballots to be counted by a method other than the one required by law.

Second, the claims against the State Board and claims asserted under state law are barred by sovereign immunity. *See* Point II, *infra*.

Third, Plaintiffs have not established a clear likelihood of success on the merits of their claims. *See* Point III, *infra*. Their First Amendment claim fails because the only burden imposed by the State of New York is a non-discriminatory requirement, commonly found in the election laws of many states, that voters must deliver their absentee ballots to their local board of elections before the close of polls on election day or else have their ballot postmarked by election day. The burden of this rule is minimal. Further, the postmark requirement furthers the State's important interest in protecting the integrity of elections by ensuring that all ballots are cast on or before election day. Their Equal Protection claim fails because there is no evidence that the State Defendants have engaged in differential treatment. Their Due Process claim fails because

3

Plaintiffs allege only election irregularities that were not the result of intentional conduct by any of the State actors and that cannot form the basis for a due process claim as against any of the State Defendants. Finally, Plaintiffs Gallagher and Patel ("Plaintiffs-Candidates") have not even alleged any injury, and so cannot establish standing or irreparable harm warranting an injunction, and are each already pursuing the adequate state court remedies available to them.

Fourth, Plaintiffs' lack of diligence in challenging the "snafu" that they claim was created as a result of an Executive Order issued on May 1, 2020, well in advance of the June 2020 Primary, negates the presumption of irreparable harm. *See* Point IV, *infra*.

Fifth, the public interest weighs against granting the injunction because the relief requested by Plaintiffs would violate the well-established principle that courts should not modify election rules on the eve of an election—or worse, as would be the case here, *after* the election has already taken place. *See* Point V, *infra*.

## FACTUAL BACKGROUND

The facts relevant to this matter are set forth in the attached Brehm Declaration and briefly summarized here.

### a. The Functions of the State and Local Boards of Elections

Pursuant to the New York Election Law, elections in New York are administered by local boards of elections at the county level. Brehm Decl. ¶ 6. In New York City, there is one local New York City Board of Elections, which has jurisdiction over the five boroughs. *Id*. ¶ 15. The 58 local boards of elections throughout the State open and count absentee ballots, in accordance with the express requirements of the Election Law. *Id*. ¶ 8. The State Board's role in the canvassing process is limited to aggregating the results transmitted to it by the local boards of elections, pursuant to Election Law § 9-202. *Id*. ¶ 7. For this reason, candidates who seek to

determine the validity of ballots cast generally file an action in state Supreme Court against their local board of election, not the State Board. *Id*. ¶ 14.

### b. Absentee Balloting in New York

Under New York Election Law, absentee voting is normally permitted as a limited exception to in-person voting, available upon application to voters who cannot attend the polls for one of several specified reasons. *Id*. ¶ 9. In the Spring of 2020, in response to the COVID-19 pandemic, Governor Cuomo issued several Executive Orders expanding access to absentee voting for the June 2020 Primary, including permitting anyone who may have the potential to contract the virus to vote by absentee ballot. *Id*. ¶ 10.

A voter who chooses to utilize the absentee ballot process receives an absentee ballot and an "Affirmation Envelope" from their local board of elections. *Id*. ¶ 11. The voter must mark the ballot, sign and seal the envelope, and return it to the local board of elections either in person or by mail. *Id*. To ensure that all votes are given equal weight and relevance, and to deter fraud and disorder, all votes must be cast on or before the close of polls on election day, regardless of how they are cast. To enforce this requirement, absentee ballots must: (1) be received by the voter's local board of elections before the close of polls on election day, or (2) if received by mail at the voter's local board of elections within seven days of election day, the Affirmation Envelope must contain a postmark dated on or before election day. *Id*.[3]

### c. USPS Policy Regarding Automatic Postmarking of Qualified Envelopes

Among the changes to the absentee ballot procedures contained in the Executive Orders

---

[3] Until earlier this year, Election Law § 8-412 required absentee ballots to be postmarked by the day before election day. The legislature amended the statute as of June 7, 2020, to provide absentee voters with an extra day to obtain the postmark. NY LEGIS 91 (2020), 2020 Sess. Law News of N.Y. Ch. 91 (S. 8130-D) (McKINNEY'S).

was a provision requiring local boards of elections to provide voters with postage paid return envelopes for absentee ballots. *Id*. ¶ 10.

Since in or around March of 2014, USPS policy has been that it will automatically apply a postmark to every envelope that follows certain USPS guidelines regarding size and shape, regardless of whether postage is prepaid. *Id*. ¶ 17 & Ex. 3. Prior to the June 2020 Primary, the State Board conferred with USPS to ensure that the return envelopes to be used by local boards of election were in the correct format and would qualify for automatic postmarking. *Id*. ¶¶ 18-19.

### d.  Plaintiffs' Claims

Plaintiffs claim, incorrectly, that USPS policy is that it will not generally postmark postage prepaid envelopes. Compl. ¶ 1. They claim that as a result of this "policy" and the provision of prepaid envelopes for absentee ballots in the June 2020 Primary, voters who used the prepaid envelopes would have had their votes discarded unless they specifically requested that USPS deviate from its alleged normal procedures and stamp their ballot. *Id*. ¶¶ 1-2. The twelve Plaintiffs-Voters allege that they submitted absentee ballots by mail on or before election day, but that their ballots were not timely postmarked. *Id*. ¶¶ 13-26. The only evidence submitted by Plaintiffs is a single absentee ballot envelope for one of the Plaintiffs-Voters, on which USPS *did* in fact apply a postmark. ECF No. 1-1.

Plaintiffs allege that the State Defendants have violated their rights under the First Amendment, Equal Protection Clause, Due Process Clause, and related New York State constitutional provisions. Compl. ¶¶ 82-105. They ask the Court to issue an emergency preliminary injunction directing the State Defendants to "count all absentee ballots received by any New York Board of Elections on or before June 30, 2020, without regard for any postmark that may or may not be on the ballot." ECF No. 3 at 1.

## STANDARD OF REVIEW

As this Court is aware, "[p]reliminary injunctive relief . . . is an 'extraordinary and drastic remedy' that is 'unavailable except in extraordinary circumstances.'" *Murray v. Cuomo*, No. 1:20-CV-03571-MKV, 2020 WL 2521449, at *8 (S.D.N.Y. May 18, 2020) (quoting *Moore v. Consol. Edison Co.*, 409 F.3d 506, 511 (2d Cir. 2005)). The "standards which govern consideration of an application for a temporary restraining order . . . are the same standards as those which govern a preliminary injunction." *Id.* (quoting *Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992)).

Where "a preliminary injunction 'will affect government action taken in the public interest pursuant to a statute or regulatory scheme,' the moving party must demonstrate (1) irreparable harm absent injunctive relief, (2) a likelihood of success on the merits, and (3) public interest weighing in favor of granting the injunction." *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 143 (2d Cir. 2016) (quoting *Red Earth LLC v. United States*, 657 F.3d 138, 143 (2d Cir. 2011)).

Further, where a plaintiff "seeks a mandatory injunction against the government that would change the status quo existing when the case was filed," a heightened standard applies in which the plaintiff "must show "a 'clear' or 'substantial' likelihood of success on the merits." *Murray*, 2020 WL 2521449, at *8 (quoting *Thomas v. New York City Bd. Of Elections*, 898 F. Supp. 2d 594, 597 (S.D.N.Y. 2012)). This heightened standard also applies where "the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (internal quotation omitted). Here, the heightened standard applies because Plaintiffs seek an order changing the status quo by overturning the

absentee ballot rules found in the New York Election Law and directing all local boards of election in New York State to count all absentee ballots received on or before the seventh day after election day.

On a motion for a preliminary injunction, the plaintiff bears the burden of introducing evidence supporting the claim to the relief requested. *See Elmsford Apartment Assocs., LLC v. Cuomo*, No. 20-CV-4062 (CM), 2020 WL 3498456, at *10 n.5 (S.D.N.Y. June 29, 2020) ("the plaintiffs bore the burden to introduce such evidence as might be necessary to support their legal arguments"); *Thurman v. Bun Bun Music*, No. 13-cv-5194 (CM) (MHD), 2015 WL 2168134, at *4 (S.D.N.Y. May 7, 2015) ("a plaintiff seeing injunctive relief must justify that application by evidentiary submissions").

## ARGUMENT

## I.  PLAINTIFFS HAVE SUED THE WRONG PARTIES

A threshold issue with Plaintiffs' claims is that they have sued the wrong parties. Under the doctrine established by *Ex Parte Young*, 209 U.S. 123 (1908), a plaintiff may sue "state officers acting in their official capacities" only to "seek prospective injunctive relief to prevent a continuing violation of federal law." *Kelly v. New York Civil Serv. Comm'n*, 632 F. App'x 17, 18 (2d Cir. 2016). Here, Plaintiffs allege no continuing act or omission by *any* of the State Defendants that is violating their rights. Rather, their claim is that USPS employees erroneously failed to apply postmarks to certain absentee ballot envelopes timely mailed on or before election day, June 23, 2020. Despite Plaintiffs' conclusory assertions otherwise, USPS—an arm of the federal government—is manifestly not an agent of the State of New York or State Board. *See Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) (no vicarious liability under § 1983). If Plaintiffs believe that USPS employees have intentionally or negligently violated their rights,

they may pursue a claim against *that* entity. Indeed, Plaintiffs have already conceded that this option is available to them, as they have stated that they may seek leave to amend the Complaint to include USPS as a defendant. Compl. ¶ 35 n.5.

Further, even if the State Defendants are proper parties to this action, there are multiple missing necessary parties who must be joined before this action may continue because "the court cannot accord complete relief among [the] existing parties" in their absence. Fed. R. Civ. P. 19. Necessary parties "are those proper parties who are so closely related to the action that their absence may be damaging to them or to the defendant." *In re Khan*, No. 10-46901-ESS, 2014 WL 10474969, at *58 (E.D.N.Y. Dec. 24, 2014).

There are at least three sets of missing necessary parties here. First, USPS is the entity that allegedly performed the action or omission that caused Plaintiffs' alleged injury. Second, the New York City Board of Elections is the local entity that processes and counts individual ballots where Plaintiffs live, Brehm Decl. ¶ 20, and which therefore will be the entity subject to any order by the Court directing that ballots to be counted by a method other than the one required by law. Neither the State Board nor other named State Defendants play a direct role in the process of opening and canvassing absentee ballots. *Id*. ¶¶ 6-7. Moreover, to the extent the Court entertains Plaintiffs' request to apply a different vote-counting procedure to every county in New York State, that would implicate the interests of every one of the 57 other local boards of election in the State. Third, any number of candidates who appeared on the ballot for the June 2020 Primary may be affected by the retroactive change in the canvass procedures requested by Plaintiff. These individuals also have a direct interest in this matter and may be prejudiced by being excluded. Each of these parties must be joined before complete relief may be obtained.

## II.     CLAIMS AGAINST THE STATE BOARD AND STATE LAW CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY

It is well settled that the Eleventh Amendment to the U.S. Constitution bars federal suits against a state and its agencies unless (i) the state unambiguously consents to be sued, or (ii) Congress has enacted legislation abrogating the state's Eleventh Amendment immunity. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54-55 (1996); *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984). Where "New York has not consented to be sued, and [] Congress has not enacted legislation abrogating New York's Eleventh Amendment immunity with regard to Plaintiffs' . . . causes of action, the claims against the [State Board] as a state agency are barred by sovereign immunity." *Yang v. Kellner*, No. 20-cv-3325 (AT), 2020 WL 2129597, at *6 (S.D.N.Y. May 5, 2020), *aff'd sub nom. Yang v. Kosinski*, 805 F. App'x 63 (2d Cir. 2020), and *aff'd sub nom. Yang v. Kosinski*, 960 F.3d 119 (2d Cir. 2020). So too here, the claims against the State Board are barred by sovereign immunity.

Further, as to each of their causes of action, Plaintiffs assert that the State Defendants are liable under related New York State constitutional provisions. Compl. ¶¶ 82-105. But the *Ex Parte Young* doctrine does not allow a federal court to issue an injunction for a violation of state law, and as such all of Plaintiffs' claims pursuant to New York State law must be dismissed. *See Kelly v. New York Civil Serv. Comm'n*, 632 F. App'x 17, 18 (2d Cir. 2016).

## III.     PLAINTIFFS HAVE NOT ESTABLISHED A CLEAR LIKELIHOOD OF SUCCESS ON THE MERITS

Plaintiffs seek an injunction overturning the absentee ballot procedures set by the New York Election Law and requiring local boards of election throughout New York State to count all absentee ballots received on or before June 30, 2020, whether or not the ballots were postmarked by election day. Plaintiffs have not established the clear or substantial likelihood of success on

the merits that is required to justify this expansive and extraordinary relief.

**A. Plaintiffs Have Not Established a Clear Likelihood of Success on their First Amendment Claim.**

When considering whether a state election law infringes on the Constitutional protection for voting rights, courts apply a test derived from *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Under this test, the court "must weigh 'the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate' against 'the precise interests put forward by the State as justifications for the burden imposed by its rule,' taking into consideration 'the extent to which those interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). If the court determines that "the plaintiffs' rights are severely burdened, the [challenged law] is subject to strict scrutiny." *Price v. New York State Bd. of Elections*, 540 F.3d 101, 109 (2d Cir. 2008) (citing *Burdick*, 504 U.S. at 435). If, however, "the burden is minor, but non-trivial, *Burdick*'s balancing test is applied. Under this balancing test, the State's reasonable and nondiscriminatory restrictions will generally be sufficient to uphold the statute if they serve important state interests." *Id.* This review is "quite deferential, and [courts] will not require 'elaborate, empirical verification of the weightiness of the State's asserted justifications.'" *Id.* (quoting *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 364 (1997).

Here, once properly understood given the factual circumstances, the burden imposed by the State of New York on absentee ballot voters is reasonable and non-discriminatory, and it serves the important state interests of ensuring that all votes are cast before the polls close on election day.

      i.     *The burden imposed by the State is reasonable and non-discriminatory.*

The burden imposed by the State of New York on Plaintiffs is reasonable, non-discriminatory, and no more severe than that imposed on absentee ballot voters by the election laws of every other state in the country. The burden Plaintiffs complain of is created by New York Election Law § 8-412, pursuant to which absentee ballots must either: (1) be received by the voter's local board of elections before the close of polls on election day, or (2) if received by the voter's local board of elections within seven days of election day, be enclosed in an envelope containing a postmark indicating that the ballot was received by USPS, another federal agency, or a foreign country's postal service, on or before election day. This is a longstanding and clear rule that does nothing more than require documentation that voters have submitted their absentee ballot on or before election day.

Further evidence of the reasonable, non-discriminatory nature of this rule is that New York's absentee ballot rules are, in fact, *more permissive* than those found in the majority of other states. Thirty-four states have election laws that require absentee ballots to arrive on or before election day, meaning that every ballot received after election day is considered invalid, even if it was postmarked on or before election day.[4] New York, along with a minority of other states, has expanded the window for absentee balloting by agreeing to accept some ballots that arrive after election day. But in every one of these more permissive states, including the State of

---

[4] *See* National Conference of State Legislatures, Voting Outside the Polling Place Report: Table 11: Receipt and Postmark Deadlines for Absentee Ballots, *available at* https://www.ncsl.org/research/elections-and-campaigns/vopp-table-11-receipt-and-postmark-deadlines-for-absentee-ballots.aspx ("The most common state deadline for election officials to receive absentee or mail ballots is on Election Day when the polls close. Some states, however, accept and count a mailed ballot if it is received after Election Day but postmarked prior to the election.").

New York, the absentee ballot must nevertheless be postmarked on or before election day.[5] The

State Defendants are aware of no other state that has adopted Plaintiffs' preferred rule, in which

absentee ballots would be accepted if they arrive after election day, even if the ballots fail to

contain a postmark or are postmarked after election day. Accepting Plaintiffs' theory that New

York's absentee ballot deadline rule imposes a severe burden on absentee ballot voters

necessarily means finding that *every other state's* absentee ballot rules also impose severe

burdens triggering strict scrutiny.

Plaintiffs' theory of burden hinges on the mistaken assertion that USPS does not typically

postmark prepaid mail. Under this theory, Executive Order 202.26 accidentally imposed a severe

burden on voters by setting them up for failure, providing prepaid envelopes that USPS was

never going to postmark pursuant to its policies. But that theory is simply wrong: As noted

above, since in or around March 2014, USPS policy has been to automatically postmark all

envelopes that follow certain USPS guidelines regarding envelope size and shape, regardless of

whether postage is prepaid.[6] Moreover, the State Board worked with USPS to ensure that the

prepaid envelopes issued by local boards of election for the June 2020 Primary followed those

guidelines and would therefore automatically receive a postmark upon receipt by USPS.

Eighteen other states similarly provide postage prepaid envelopes to absentee voters that are

---

[5] *Id.*

[6] Plaintiffs' preliminary injunction papers repeatedly premise their arguments on this same mistaken belief that State Defendants forced USPS to suddenly change its longstanding postmarking practice. *See, e.g.*, Pls.' Mot. at 2 (claiming incorrectly that USPS failed to "implement[] a massive change in the way they process mail (on a national scale) in just weeks"); *id.* at 3 (claiming incorrectly that "USPS fail[ed] to change its decades old practice of *not* stamping pre-paid envelopes, at the [State] Board's request, during a pandemic") (emphasis in original). Again, USPS policy *since 2014* has been to automatically postmark all qualifying pieces of mail.

processed and postmarked by USPS, further refuting Plaintiffs' contention that Executive Order 202.26 was a novel policy that the State Defendants should have expected would flummox postal workers throughout the State.[7]

Plaintiffs further speculate that postal workers may have failed to apply postmarks to some unknown number of absentee ballots mailed on or before the June 2020 Primary. *See* Compl. ¶ 60. Such "garden variety" election irregularities, while unfortunate, generally do not create a federal constitutional claim. *See Shannon v. Jacobowitz*, 394 F.3d 90, 96 (2d Cir. 2005). Even if USPS may have randomly and erroneously failed to follow its own postmarking policies in some isolated instances, that does not amount to a claim that the *State Defendants* have imposed any additional burden, as is necessary to assert a First Amendment claim against these parties. Moreover, Plaintiffs have failed to meet their burden of submitting evidence in support of this claim. The only absentee ballot evidence submitted by Plaintiffs is a single postage prepaid envelope that was allegedly mailed by one of the Plaintiffs. Compl. Ex. 1 (ECF No. 1-1). But that envelope *contains a USPS postmark*. It therefore refutes the contention that, as a matter of practice, USPS declines to apply postmarks to envelopes containing absentee ballots. And, even if Plaintiffs were able to produce evidence of isolated errors by postal workers, that would hardly support Plaintiffs' unsupported speculation that USPS failed to postmark the ballots of "at least 120,000 voters" statewide. Pls.' Mot. at 3 n.5.

Finally, Plaintiffs argue that Executive Order 202.26 created a change in rules during an election cycle that should therefore receive heightened scrutiny. Pls.' Mot. at 11. But that

---

[7] *See* National Conference of State Legislatures, Voting Outside the Polling Place Report: Table 12: States With Postage-Paid Election Mail, *available at* https://www.ncsl.org/research/elections-and-campaigns/vopp-table-12-states-with-postage-paid-election-mail.aspx.

argument, too, is premised on Plaintiffs' mistaken belief that the State Defendants forced a sudden change in USPS policy. Plaintiffs opine that the burden would be less severe had the State Defendants delayed enforcement of the postmark requirement for four years, until 2024. In that hypothetical, they argue, USPS would "have had appropriate time to . . . train its employees to stamp all envelopes nationwide," and "Candidates and the [State] Board alike would also have time (and notice of the need) to caution voters that they *needed* to ensure a postmark be on their ballot if they were mailing it towards the end of the absentee period." Pls.' Mot. at 12 (emphasis in original). But the reality is that the postmark requirement has been a part of New York election law for decades, and USPS policy has been to automatically apply postmarks to all envelopes that meet its size and shape guidelines since 2014. New York's changes to absentee balloting in this cycle *reduced* the burden on absentee voters by expanding the availability of absentee voting, providing prepaid envelopes, and permitting ballots to be counted that were postmarked on election day. These are not mid-cycle changes in the rules that warrant heightened scrutiny.

ii.      *The absentee ballot deadline serves important State interests.*

New York's absentee ballot deadline serves the important State interest of ensuring election security and integrity. A universal, fundamental feature of elections is that the results of the balloting must remain unknown until voting is complete for everyone. Brehm Decl. ¶ 13. This principle ensures that all votes are given equal weight and deters fraud and disorder. *Id*. Like every other state in the country, New York requires voters to submit their ballots on or before the close of polls on election day. As noted above, as to absentee voters, most states enforce this requirement by only accepting absentee ballots actually received on or before election day. New York goes one step further, accepting ballots received after election day.

Election Law § 8-412 enforces the election day deadline for casting a vote by requiring that the ballot be postmarked on or before election day. Every other state with a similar rule likewise imposes a postmark requirement. *See* National Conference of State Legislatures Table 11, *supra* n.4.

The United States Supreme Court recently endorsed this important state interest in ensuring that ballots are cast on or before election day. In *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205 (2020) (per curiam), the Court stayed a District Court's order granting a preliminary injunction requiring the State of Wisconsin to count absentee ballots postmarked after election day so long as they were received within one week following the election—nearly the very same relief Plaintiffs seek here. In that case, the District Court had granted the injunction because of an unprecedented surge of absentee ballot applications during the COVID-19 pandemic, resulting in a backlog of ballots that had been requested but not promptly mailed to voters. *Id*. at 1208-09 (Ginsburg, J., dissenting). The Court nevertheless stayed the District Court's order, noting that "allow[ing] voters to mail their ballots after election day" is "extraordinary relief [that] would fundamentally alter the nature of the election by voting for six additional days after the election." *Id*. at 1208 (per curiam opinion). Likewise here, Plaintiffs' proposed relief would fundamentally alter the nature of the election and undermine important State interests by preventing local boards of elections from ensuring that absentee ballots have been cast by election day. Plaintiffs fail to grapple with or even cite *Republican National Committee* in their complaint or motion for a preliminary injunction.

Because the absentee ballot deadline is a minimal burden that serves important State interests, Plaintiffs' First Amendment claim fails the *Anderson-Burdick* test.

**B. Plaintiffs Have Not Established a Clear Likelihood of Success on their Equal Protection Claim**

A plaintiff who brings a federal § 1983 action "to remedy errors in the election process allegedly violating the equal protection clause" must establish that "the state action constituted intentional or purposeful discrimination." *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 199 (E.D.N.Y. 2013) (quoting *Gold v. Feinberg,* 101 F.3d 796, 800 (2d Cir.1996)). "Thus, to state an equal protection claim, Plaintiff must allege that the [board of elections] intentionally discriminated against him, 'either by adopting out of [discriminatory] animus policies which are facially neutral but have a . . . discriminatory effect, or by applying a facially neutral policy in a . . . discriminatory manner.'" *Id*. (quoting *Rivera–Powell v. N.Y. City Bd. of Elections,* 470 F.3d 458, 470 (2d Cir.2006)). "'To establish such intentional or purposeful discrimination, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently.'" *Id*. (quoting *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 193 (2d Cir.1994)).

Plaintiffs have not established a clear likelihood of success on this claim because the State Defendants treat all absentee voters in exactly the same way. Pursuant to New York Election Law § 8-412, absentee ballots must either be received by the local board of elections before the close of polls on election day, or be postmarked by election day and received within seven days of the election. This is a reasonable and neutral requirement, common to many state election laws around the country, that applies to all voters. Plaintiffs have not alleged facts suggesting that this rule has a discriminatory effect or that State Defendants have applied the rule in a discriminatory manner.

Here too, Plaintiffs' claim rests on their mistaken belief that USPS does not typically apply postmarks to election mail contained in postage prepaid envelopes. Starting from that

incorrect assumption, Plaintiffs argue that the "absence of statewide—and, indeed, nationwide—consistency in how the USPS handles ballots," combined with the postmark requirement, "subjects absentee voters to arbitrary differences in the way their ballots are counted depending on where they reside and, in some circumstances, depending on who happens to be collecting mail." Compl. ¶ 96. But Plaintiffs are simply wrong: USPS does have a consistent, nationwide policy that it will automatically apply postmarks to all envelopes that follow certain USPS guidelines. The State Board followed those guidelines, working with USPS's support, to ensure that the return envelopes for the June 2020 Primary would qualify for automatic postmarks. Brehm Decl. ¶¶ 18-19. Given these facts, the equal protection claim falls apart.

Further, even if it is the case that some USPS postal workers mistakenly failed to apply postmarks to some isolated number of absentee ballots, those acts do not raise a claim of intentional or purposeful discrimination *by the State Defendants*, especially given the State Board's efforts to ensure that the envelopes qualified for automatic postmarking.

## C. Plaintiffs Have Not Established a Clear Likelihood of Success on their Due Process Claim

The Due Process Clause of the Fourteenth Amendment states that "no State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV § 1. To state a due process claim, a plaintiff must allege intentional conduct by a state actor. *Shannon v. Jacobowitz*, 394 F.3d 90, 94 (2d Cir. 2005). This is because "'the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property.'" *Id.* (quoting *Daniels v. Williams,* 474 U.S. 327, 328 (1986)) (emphasis in original).

In the elections context, this means that "'the due process clause . . . offer[s] no guarantee against errors in the administration of an election'" that are not the result of intentional conduct

by a state actor. *Id*. (quoting *Powell v. Power*, 436 F.2d 84, 85–86 (2d Cir.1970)). In *Shannon*, the Second Circuit applied this principle to a due process claim that was based on an allegation that a voting machine malfunction led to the failure to count between 69 and 139 votes in an election that was decided by a margin of 25 votes. *Id*. at 91-92. The missing votes represented as much as 2.4% of all votes cast in the election. *Id*. (final tally was 2,936 for one candidate and 2,911 for the other). The court found that there was no due process violation, holding that "[a] voting machine malfunction is the paradigmatic example of a 'garden variety' election" irregularity that does not rise to the level of a federal due process claim because there has been no allegation of intentional State conduct. *Id*. at 96.[8] The court concluded that "the matter before the district court—a malfunctioning voting machine that simply failed to register votes on one of the lines—is an unfortunate but unintended irregularity, and as such, differs significantly from purposeful state conduct directed at disenfranchising a class or group of citizens." *Id*. The Second Circuit warned that federal courts must draw this line because to hold otherwise "would be to invite federal intervention into every negligent disruption of a local election," which is "'in the exclusive cognizance of the state courts.'" *Id*. at 97 (quoting *Powell*, 436 F.2d at 86).

So too here, Plaintiffs' allegation that USPS mistakenly failed to postmark some unknown number of absentee ballot envelopes represents an unfortunate but unintended garden variety election irregularity. Plaintiffs allege no wrongful intentional conduct by any of the State Defendants or any other State actor. And the potentially negligent conduct at issue—the alleged

---

[8] Citing cases, the Second Circuit listed other examples of "garden variety" irregularities that do not state a federal due process claim, including "human error resulting in miscounting of votes and delay in arrival of voting machines," "allegedly inadequate state response to illegal cross-over voting," "mechanical and human error in counting votes," "technical deficiencies in printing ballots," "mistakenly allowing non-party members to vote in a congressional primary," and "arbitrary rejection of ten ballots." *Id* (internal citations omitted).

failure to postmark certain envelopes—was performed by USPS employees, not due to any policy or practice of any of the State Defendants. These allegations simply do not state a federal due process claim against the State Defendants.

Plaintiffs' attempt to avoid the due process requirement of intentional conduct is, like their other claims, fatally premised on their mistaken assertion that USPS does not typically postmark prepaid election mail and that the State Defendants should have taken this into account when requiring local boards of election to send postage paid return envelopes with absentee ballots. They argue that a voter whose ballot is invalidated "because of errors resulting from his reasonable reliance" on the State Board's erroneous guidance may state a due process claim. Pls.' Mot. at 17 (quoting *Farrell v. Bd. of Elections in City of New York*, No. 85-cv-6099 (JES), 1985 WL 2339, at *10 n.1 (S.D.N.Y. Aug. 20, 1985). Plaintiffs' due process theory is that the State Defendants provided allegedly erroneous guidance by sending voters postage prepaid envelopes that they knew USPS was never going to postmark, thus creating a "Catch-22" when combined with the postmark requirement. Pls.' Mot. at 18. Once again, Plaintiffs are wrong. Because USPS does automatically apply postmarks to qualifying postage prepaid envelopes as a matter of policy, and the State Board worked with USPS to ensure that the absentee ballot envelopes satisfied the size and shape requirements, the State Defendants did not provide any erroneous guidance.

### D.  The Plaintiffs-Candidates Lack Standing and Are Pursuing Adequate State Court Remedies

The claims of the two Plaintiff-Candidates, Emily Gallagher and Suraj Patel, fail for the additional reason that they have not alleged an injury and therefore lack standing. To demonstrate Article III standing, a plaintiff must (1) suffer an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendants, and (3) that is likely to be redressed by a

favorable judicial decision. *See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016). The Plaintiffs-Candidates simply assert that they are each candidates on the ballot, without any explanation of whether or how they have suffered an injury caused by the State Defendants. Compl. ¶¶ 11-12. It is not clear whether they allege that USPS mistakenly failed to postmark any timely absentee ballots in their districts or, if so, whether the number of uncounted absentee ballots in their districts were less than the margin of victory of their opponent.[9] Having failed to allege an injury, they do not have standing to pursue a federal constitutional claim.

To the extent that the Plaintiffs-Candidates object to the canvass of ballots conducted by the New York City Board of Elections, State law provides them with adequate avenues for redress. In fact, each of the Plaintiffs-Candidates is already pursuing such a challenge in State court. *See Patel v. Maloney, et al*., Index No. 154624/2020 (Sup. Ct. N.Y. Cty.); *Gallagher v. New York City Board of Elections*, Index No. 700012/2020 (Sup. Ct. Kings Cty.) (attached as Brehm Decl. Exs. 1 and 2). Given that ongoing State court litigation, this Court should abstain from entertaining their overlapping federal claims. *See Spargo v. New York State Comm'n on Judicial Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (under *Younger* abstention doctrine, "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings").

---

[9] On the contrary, according to media reports Plaintiff-Candidate Gallagher won her election and her opponent has conceded. *See* Bill Mahoney, *Lentol concedes to Gallagher*, Politico (July 22, 2020), https://www.politico.com/states/new-york/city-hall/story/2020/07/22/lentol-concedes-to-gallagher-1302977.

### IV.     PLAINTIFFS HAVE NOT DEMONSTRATED IRREPARABLE HARM

The standard in this Circuit is that "alleged constitutional violations presumptively constitute irreparable harm." *Murray*, 2020 WL 2521449, at *9. However, a plaintiff's lack of diligence in filing the action and seeking injunctive relief can negate the attempted showing of irreparable harm. "Lack of diligence, standing alone, may . . . preclude . . . preliminary injunctive relief, because it goes primarily to the issue of irreparable harm . . . ." *Majorica, S.A. v. R.H. Macy & Co.*, 762 F.2d 7, 8 (2d Cir. 1985). *See also Brooklyn Brands LLC v. Lieberman*, No. 18-CV-7245 (LDH), 2018 WL 10246003, at *1 (E.D.N.Y. Dec. 23, 2018) (denying emergency relief where the plaintiff waited "no less than six but as much as fifteen weeks to seek emergency relief").

Plaintiffs' theory is that Executive Order 202.26, issued on May 1, 2020, created the scenario that they claim violates their rights. There is no reason they could not have brought this same action and request for emergency relief as soon as that Executive Order was issued, when there would have been time to resolve any issues in advance of the June 2020 Primary. That they failed to do so, and instead waited over 10 weeks, until after the election had already taken place, negates the presumption of irreparable harm.

Further, as to the Plaintiffs-Candidates, the availability of the state court proceeding, which they are currently pursuing, undercuts any showing of immediate and irreparable harm.

## V.   THE PUBLIC INTEREST WEIGHS AGAINST CHANGING THE RULES FOR AN ELECTION THAT HAS ALREADY OCCURRED

Finally, the balance of the equities and the consideration of the public interest weigh in favor of the State Defendants. Plaintiffs "must demonstrate that 'the balance of equities tips in [their] favor' and that 'an injunction is in the public interest.'" *Make the Rd. New York v. Cuccinelli*, 419 F. Supp. 3d 647, 665 (S.D.N.Y. 2019) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). "These factors merge when the Government is the opposing party." *Id.* (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009). In assessing these factors, "the court must 'balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief,' as well as 'the public consequences in employing the extraordinary remedy of injunction.'" *Id.* (quoting *Winter*, 555 U.S. at 24).

The injunction requested by Plaintiffs is not in the public interest because it would upend the rules by which the June 2020 Primary was conducted—and do so after that election has already taken place. The Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *Republican Nat'l Comm.*, 140 S. Ct. at 1207. *See also Yang*, 2020 WL 2129597, at *12 (granting preliminary injunction where the election was "still almost two months away, giving Defendants and the public enough time to respond appropriately to this order"). Worse than the eve of the election, the relief requested here would, one month *after* election day, retroactively alter the rules that all candidates and voters thought had applied. The public interest would not be served by such an extraordinary result. By contrast, Plaintiffs' alleged injury is simply the result of the application of New York's reasonable and non-discriminatory rule that absentee ballots must be received or postmarked by election day.

**VI.    THE STATE DEFENDANTS DO NOT OPPOSE THE MOTION TO INTERVENE TO THE EXTENT IT SEEKS TO ASSERT CLAIMS AGAINST THE NEW YORK CITY BOARD OF ELECTIONS**

On July 22, 2020, candidates Maria D. Kaufer and Ethan Felder (the "Proposed Intervenor-Plaintiffs") filed a motion to intervene in this matter and motion for a preliminary injunction. ECF Nos. 11 & 12. The Proposed Intervenor-Plaintiffs' motion and proposed complaint do not raise any claims nor seek any relief from the State Defendants. Rather, the Proposed Intervenor-Plaintiffs seek to add as defendants the New York City Board of Elections ("New York City Board"), together with its President and Executive Director (the "Proposed New York City Board Defendants"). Proposed Intervenor-Plaintiffs allege that the New York City Board has not counted certain absentee ballots for various reasons, including the lack of a postmark. *See* ECF No. 12 at 2. They ask the Court for an order: (1) declaring that the Proposed New York City Board Defendants have violated Proposed Intervenor-Plaintiffs rights to free speech, equal protection, and due process; and (2) requiring the Proposed New York City Board Defendants to count all absentee ballots cast by 28th Assembly District Part A voters received on or before June 30, 2020. ECF No. 11-1 at 15.

The court may permit intervention where the intervening party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). As discussed above in Part I, *supra*, the New York City Board of Elections is a necessary party to this action and thus the State Defendants do not oppose the motion to intervene to the extent it seems to add the Proposed New York City Board Defendants. However, to the extent that the Proposed Intervenor-Plaintiffs seek any relief as against the State Defendants, either via their proposed motion for a preliminary injunction or via their proposed intervenor complaint, State Defendants oppose such intervention on the ground that any such claims would be futile for the reasons explained in this Opposition.

**CONCLUSION**

For the reasons set forth above, the State Defendants respectfully request that the Court

deny Plaintiffs' motion for a preliminary injunction.

Dated: New York, New York
      July 22, 2020

                              Respectfully submitted,

                              LETITIA JAMES
                              Attorney General
                              State of New York
                              *Attorney for State Defendants*

                              By: /s/ Owen T. Conroy
                              Owen T. Conroy
                              Assistant Attorney General
                              28 Liberty Street
                              New York, New York 10005
                              Tel.: (212) 416-6382
                              Email: Owen.Conroy@ag.ny.gov