UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------- X
EMILY GALLAGHER, SURAJ PATEL, KATHERINE
STABILE, JILLIAN SANTELLA, AARON SEABRIGHT,
JAMES C. MCNAMEE, KRISTIN SAGE ROCKERMAN,
MARIA BARVA, MIRIAM LAZEWATSKY, MYLES
PETERSON, SAMANTHA PINSKY, CHRISTIAN O'TOOLE,    20 Civ 5504 (AT)
TESS HARKIN, CAITLIN PHUNG, ANTONIO PONTEX-
NUNEZ, *individually, and on behalf of all others similarly
situated*,

                                      Plaintiffs,

                                         vs.

NEW YORK STATE BOARD OF ELECTIONS; PETER S.
KOSINSKI, ANDREW SPANO, and DOUGLAS KELLNER,
*individually and in their official capacities as Commissioners of
the New York State Board of Elections;* TODD D.
VALENTINE, ROBERT A. BREHM*, individually and in their
official capacities as Co- Executive Directors of the New York
State Board of Elections; and* ANDREW CUOMO *as Governor
of the State of New York*,

                                      Defendants.
--------------------------------------------------------------------------------X
MARIA D. KAUFER and ETHAN FELDER,

                               Intervenor Plaintiffs

                                         vs

NEW YORK STATE BOARD OF ELECTIONS; PETER S.
KOSINSKI, ANDREW SPANO, and DOUGLAS KELLNER,
*individually and in their official capacities as Commissioners of
the New York State Board of Elections;* TODD D. VALENTINE,
ROBERT A. BREHM*, individually and in their official capacities
as Co- Executive Directors of the New York State Board of
Elections; and* ANDREW CUOMO *as Governor of the State of
New York*; NEW YORK CITY BOARD OF ELECTIONS;
PATRICIA ANNE TAYLOR individually and as President of the
New York City Board of Elections; and MICHAEL J. RYAN,
individually and as the Executive Director of the New York City
Board of Elections,

                                        Defendants
-------------------------------------------------------------------------------- X

**INTERVENOR PLAINTIFFS' REPLY MEMORANDUM OF LAW**

**INTRODUCTION**

Intervenor Plaintiffs submit this brief Memorandum of Law in further support of the Motion for A Preliminary Injunction. We adopt all of the arguments made by Plaintiffs' Counsel in their Original and Reply Memoranda, and to the extent that the Declaration of Arthur Schwartz contains legal rather than factual matter, we incorporate that by reference into the Memorandum of Law as well. We should note that in Paragraph 8 of the Schwartz Declaration we began to cite the "Farrell" case as an example of the NYC Board of Elections being suable in its own name in federal Court for violation of Constitutional right. The full citation which we mean to refer to is *Farrell v. Board of Elections in City of New York*, 1985 WL 2339 (SDNY 1985) (Of note: defendant Kellner argued the successful Constitutional claim against the City Board in that case, which involved kicking a Mayoral candidate off the ballot).

**ARGUMENT**

**POINT I**

**THE FAILURE TO COUNT ANY ABSENTEE BALLOT RECEIVED ON OR BEFORE JUNE 30 BECAUSE IT HAD NO POSTMARK OR A LATE POSTMARK CAUSED, IN THE CIRCUMSTANCES AT BAR, AN UNDUE BURDEN OF THE FIRST AMENDMENT VOTING RIGHTS OF PLAINTIFFS, INTERVENORS AND ALL VOTERS**

Judge Keenan, in the *Farrrell* case, pronounced a view of the law which holds true in this case, some 34 years later:

> The right to vote is the cornerstone of a free society. The Supreme Court has said, with reference to the right to vote, that 'No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory if the right to vote is undermined.' Wesberry v. Sanders, 376 U.S. 1, 17 (1964); see Harper v. Virginia State Board of Elections, 383 U.S. 663, 667

2

(1966); Reynolds v. Sims, 377 U.S. 533, 562 (1964); Yick Wo v. Hopkins, 118 U.S. 356, 370 (1886). The right to vote in a primary election is at least as important as the right to vote in a general election, particularly where one party dominates the political horizon. Thus, federal courts have the authority and obligation to protect the franchise in a primary election. See Smith v. Allwright, 321 U.S. 649, 664–65 (1944); United States v. Classic, 313 U.S. 299, 318 (1941); Moldonado v. Rodriguez, 523 F. Supp. 177, 179–80 (S.D.N.Y. 1981); Williams v. Sclafani, 444 F. Supp. at 910.

*Farrell v. Board of Elections in City of New York*, 1985 WL 2339, at *3.

In *Obama for America v. Husted*, 697 F.3d 423, 428 (C.A.6 2012), the Sixth Circuit Court of Appeals stated that the First Amendment is implicated in the manner in which early voting is carried out once a state allows early voting:

> "The right to vote is a "precious" and "fundamental" right. *Harper v. Va. State Bd. of Elections,* 383 U.S. 663, 670, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). "Other rights, even the most basic, are illusory if the right to vote is undermined." *Wesberry v. Sanders,* 376 U.S. 1, 17, 84 S.Ct. 526, 11 L.Ed.2d 481 (1964); *see also Yick Wo v. Hopkins,* 118 U.S. 356, 370, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (finding that the right to vote is "preservative of all rights"). " 'The right to vote is protected in more than the initial allocation of the franchise. Equal protection applies as well to the manner of its exercise.' " *League of Women Voters v. Brunner,* 548 F.3d 463, 477 (6th Cir.2008) (quoting *Bush v. Gore,* 531 U.S. 98, 104, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000)).

Not only can the right to vote not be denied outright, it cannot be destroyed by alteration of ballots, *see United States v. Classic*, 313 U.S. 299, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941), or diluted by stuffing of the ballot box, *see United States v. Saylor*, 322 U.S. 385, 64 S.Ct. 1101, 88 L.Ed. 1341 (1985). "No right is more precious in a free country than that of having a voice in the election of those who make the laws under which, as good citizens, we must live. Other rights, even the most basic, are illusory **if the right to vote is undermined**. *Wesberry v. Sanders*, 84 S.Ct. 526, 535, 376 U.S. 1, 17 (1964).

There is an important Second Circuit case that defendants do not even discuss, which has great bearing on this one, *Lerman v. Board of Elections in City of New York*, 232 F.3d 135 (C.A.2 2000). In *Lerman* the Second Circuit held as unconstitutional a section of the Election

3

Law which required that people circulating nominating petitions live in the district, they were circulating the petitions in. The City and State Boards of Election were defendants. In applying *Burdick* and *Anderson* the Court held:

> In determining the level of scrutiny to be applied to the section 6–132(2) witness residence requirement, we first must assess the extent to which that requirement burdens First and Fourteenth Amendment rights. *See Buckley v. American Constitutional Law Found., Inc.,* 525 U.S. 182, 119 S.Ct. 636, 642, 142 L.Ed.2d 599 (1999); *id.* at 649 (Thomas, J., concurring); *Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992). When state election laws subject speech, association, or the right to vote to " 'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.' " *Burdick,* 504 U.S. at 434, 112 S.Ct. 2059 (citation omitted); *see also Prestia v. O'Connor,* 178 F.3d 86, 88 (2d Cir.1999), *cert. denied,* 528 U.S. 1025, 120 S.Ct. 539, 145 L.Ed.2d 418 (1999); *Schulz v. Williams,* 44 F.3d 48, 56 (2d Cir.1994). By contrast, when a state election law "imposes only reasonable, nondiscriminatory restrictions" upon First and Fourteenth Amendment rights, then "the State's important regulatory interests are generally sufficient to justify the restrictions." *Burdick,* 504 U.S. at 434, 112 S.Ct. 2059 (internal quotation marks omitted); *see also Prestia,* 178 F.3d at 88. The burden imposed by the challenged regulation is not evaluated in isolation, but within the context of the state's overall scheme of election regulations. *See Prestia,* 178 F.3d at 88.
>
> Ordinarily, policing this distinction between legitimate ballot access regulations and improper restrictions on interactive political speech does not lend itself to a bright line or "litmus-paper test," *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983); *see also American Constitutional Law Found.,* 119 S.Ct. at 642, but instead requires a particularized assessment of the nature of the restriction and the degree to which it burdens those who challenge it. *See Burdick,* 504 U.S. at 434, 112 S.Ct. 2059; *Schulz,* 44 F.3d at 56. However, in those cases in which the regulation clearly and directly restricts "core political speech," as opposed to the " 'mechanics of the electoral process,' " it may make "little difference whether we determine burden first," since "restrictions on core political speech so plainly impose a 'severe burden' " that application of strict scrutiny clearly will be necessary. *American Constitutional Law Found.,* 119 S.Ct. at 650 (Thomas, J., concurring) (internal citations omitted); *see id.* at 642 n. 12 (opinion of the court); *McIntyre v. Ohio Elections Commission,* 514 U.S. 334, 345, 115 S.Ct. 1511, 131 L.Ed.2d 426 (1995) (declining to apply severe/lesser burdens balancing test to direct regulation of "pure speech").

*Lerman v. Board of Elections in City of New York*, 232 F.3d 135, 145–46 (C.A.2 2000).

The Court continued, with words responsive to the State and City Defendants' argument that the rule being applied to postmarkless absentee ballots were necessary procedural requirements:

> It should be clear, however, that even if one characterizes this restriction on petition circulation as being more directly concerned with the "mechanics of the electoral process" than with speech, requiring us to evaluate the severity of the burdens on political speech and association posed by that regulation before determining the level of scrutiny to be applied, the witness residence requirement severely burdens political speech by "drastically reduc [ing] the number of persons ... available to circulate petitions." *American Constitutional Law Found.,* 119 S.Ct. at 643; *see id.* at 651 (Thomas, J., concurring) (restriction on petition circulation severely burdens speech if it "reduces the voices available to convey political messages"); *Grant,* 486 U.S. at 422–23, 108 S.Ct. 1886 (prohibition on paid petition circulators restricts political speech by "limit[ing] the number of voices who will convey appellees' message and ... mak[ing] it less likely that appellees will garner the number of signatures necessary" to gain access to ballot, thereby limiting their ability to influence public political discussion); *Krislov,* 226 F.3d at 860 (statute limiting petition circulators to residents of the political subdivision for which the office is to be voted substantially burdens political speech by "preclud[ing] the candidate from utilizing a large class of potential solicitors to convey his message"); *Molinari,* 82 F.Supp.2d at 76 (witness residence requirement in section 6–132(2) substantially burdens political speech because it reduces the number of individuals available to circulate designating petitions and, therefore, "reduces the chances that those supporting the candidates will gather signatures sufficient to qualify for the ballot"). Moreover, petition circulation bears an intimate relationship to the right to political or expressive association. The right to political association also "is at the core of the First Amendment, and even practices that only potentially threaten political association are highly suspect." *Krislov,* 226 F.3d at 860 (quoting *McCloud v. Testa,* 97 F.3d 1536, 1552 (6th Cir.1996)) (internal quotation marks omitted). Obviously, the section 6–132(2) witness residence requirement does not ban association between candidates and non-residents of the electoral district altogether—but the statute need not go that far in order to substantially burden the right to political association. "[B]y preventing the candidates from using signatures gathered by [non-resident] circulators ..., the law inhibits the expressive utility of associating with these individuals because these potential circulators cannot invite voters to sign the candidates' petitions in an effort to gain ballot access." *Krislov,* 226 F.3d at 861.

*Lerman v. Board of Elections in City of New York*, 232 F.3d 135 at 146–47.

The situation we face here is not really addressed by the State Election Law provisions about a ballot being postmarked, or about the date of the postmark. The facts at play involve a not well thought out series of Executive Orders designed, with good reason, to expand the ability

of people to vote in the face of the pandemic. But those Executive Orders did not create any means by which County Boards, including the NYC Board, could send out millions of absentee ballots in a timely manner. And they did not address the Postal Rules which did not require such ballots to be postmarked. So, it was left to the State Board to issue guidance in the way of some emergency or new regulation, a regulation it was authorized, and duty bound to issue . See Schwartz Amended Declaration paragraph 3. – **and it did not.** Imposing the BOE old postmark rules on voters who were receiving ballots as late as the day of the primary, and invalidating their votes if the Postal Service did not postmark them, placed a severe burden on the First Amendment rights of those voters.

There was a less intrusive alternative: count all ballots received by the June 30 cut-off date. That week gave some leeway to the expression of rights that those ballots contained.

### POINT II

### THERE WERE NO PREREQUISITES TO FILING THIS LAWSUIT NOR IS IT A MATTER WHICH CAN BE ADDRESSED IN THE STATE COURTS NOR DO INTERVENORS LACK STANDING

The City Defendants assert in Attorney Kitzinger's letter that this lawsuit the Intervenors must "comply with the requirements of the Federal Rules of Civil Procedure and Title 28 of the United States Code prior to receiving relief." No particular requirement is described, and we know of none. If this is an attempt to preserve some issue for appeal the Court should not countenance it as a seriously posited argument.

Intervenors have no dispute with the Defendants which can be resolved in State Court because as the City argues, that Board, like all Boards, applied the inadequate law and regulations as they exist. Nor have the Intervenors commenced suit in State Court, a ridiculous process which at least the NYC Board requires for a candidate to review and receive copies (if

asked) of disqualified ballots. This is not a "garden variety" Election Law case which the Courts in this Circuit sometimes defer to the State Courts. See *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 460 (C.A.2 2006)

## CONCLUSION

For the reasons stated herein, and in all papers filed by Plaintiffs and Intervenors in this case the relief sought in the Complaint and in Intervenors Complaint should be granted.

Dated:  New York, New York
         July 24, 2020

>                                          ADVOCATES FOR JUSTICE
>                                          CHARTERED ATTORNEYS
>                                          *Attorneys for Intervenor Plaintiffs*
>
>
>                                          By: /s/ *Arthur Z. Schwartz*
>                                          Arthur Z. Schwartz
>                                          225 Broadway, Suite 1902
>                                          New York, New York 10007
>                                          Tel.: (212) 285-1400
>                                          Fax: (212) 285-1410
>                                          aschwartz@afjlaw.com

1.      In addition to having practiced Election Law in New York for a number of years, I have been an elected Democratic District Leader from 1995-2005, and from 2013 to the present. I am also the Law Co-Chair of the Manhattan Democratic Party. As such I am familiar with the manner in which both the NY State Board of Elections (NYSBOE) and the NY City Board of Elections (NYCBOE) interact with each other, and the important role the NYSBOE plays in the ballot counting process, and the operation of the NYCBOE, which attorney Stephen Kitzinger, relying on a 1933 case, call "ministerial." No one in this case wants to take responsibility for the snafu with absentee ballots which are returned by Business Reply Mail without a postmark, and no one wants to take responsibility for the fact that county boards, and the NYCBOE were sending out absentee ballots as late as Friday June 19, 2020 to voters who were supposed to receive them and place them back in the mail by Tuesday June 23, 2020. See https://www.nytimes.com/2020/06/19/us/politics/nyc-vote-by-mail.html (***Vote-by-Mail Ballot Requests Overwhelm New York City Elections Agency,*** **NY Times, June 19, 2019**), annexed as Exhibit E. Defendant Kellner is quoted in the article as stating: "If they haven't mailed all the absentee ballots by Friday, voters aren't going to get them by Tuesday,"

2.      The State Board of Elections is the primary interpreter (other than the Courts) of Election Law in New York State. It does not just receive reports of ballot canvassing. It has the power to enact binding regulations, and the responsibility for directing the Boards to act in line with the law. Although it cannot "remove" a County Board of Election, it can require that a Local Board act in a certain manner, and its regulations supersede any rules promulgated by a County Board. Failure by a County Board to act in accordance with its regulations becomes a ground, in litigation, for a candidate or a voter to challenge the action of a Local Board.

3.      The source of this power is NY State Election Law Sections 3-102(1) and 3-102(14). Section 3-102 (4) is titled **State board of elections; general powers and duties** It

reads "In addition to the enforcement powers and any other powers and duties specified by law, the state board of elections shall have the power and duty to: (1) issue instructions and promulgate rules and regulations relating to the administration of the election process, election campaign practices and campaign financing practices consistent with the provisions of law;" Subsection 14 continues: "[shall have the power and the duty to ] **take all appropriate steps to encourage the broadest possible voter participation in elections."** Robert Brehm's assertion that the State Board has no power over County Boards has no basis in the law.

4. The In line with this provision of the law, the State Board issues regulations which the County Boards must follow; in fact, these regulations have the force of law. They can be found at 9 NYCRR Sections 6200.1 – 6219.3.  Section 6210.13,  9 NYCRR 6210.13, is titled **Standards for Determining Valid Votes**. This regulation includes very precise directions about how the ballots should be counted by County Boards, including absentee ballots. I daresay that if the State Board said : "Count all ballots without a postmark which was received 7 days after the in-person voting every County Board would have to comply.

5. Never before the June 23, 2020 primary have voters been supplied with postage paid envelopes to return absentee ballots. In the past all absentee ballots required a stamp of a postage meter strip if the voter wanted to return the ballot to the Board.

6. Nothing in the Election Law states that a voter is responsible for obtaining a postmark. Section § 8–410 reads in relevant part: *"The absentee voter shall mark an absentee ballot as provided for paper ballots or ballots prepared for counting by ballot counting machines. He shall make no mark or writing whatsoever upon the ballot, except as above prescribed, and shall see that it bears no such mark or writing. He shall make no mark or writing whatsoever on the outside of the ballot. After marking the ballot or ballots he shall fold each such ballot and enclose them in the envelope and seal the envelope. He shall then take and*

*subscribe the oath on the envelope, with blanks properly filled in.* **The envelope, containing the ballot or ballots, shall then be mailed or delivered to the board of elections of the county or city of his residence.**" Emphasis added.

7. The NYCBOE is not just a "ministerial agency, " whatever that means. It enacts Rules and Regulations. See for Example its Canvassing Rules (portions of which are annexed as Exhibits F(1) & F(2), a manual which NYCBOE General Counsel Steven Richman referred to repeatedly in our July 9 email exchange (Intervenors' Complaint Exhibit A)when he denied Ms. Kaufer and Mr. Felder the right to inspect (not copy) the envelopes of the absentee ballots which were being disqualified. The Canvassing Rules state, Exhibit F(1)on page 3 of 29: *"The purpose of this document is to provide detailed instructions resulting in the successful certification of an election at the Board of Elections in the City of New York. For every election, the Board conducts a number of canvass activities as prescribed by New York State Election Law, New York State Board of Elections Rules and Regulations* **and the Board's policies** *and standard operating procedures."* (Emphasis added). Exhibit F(2), titled "Other Paper Ballots Canvass Procedure," was issued in 2017 and a revision, reflecting changes in the NYS Election Law enacted in 2019, became effective on 2-27-20, before the pandemic quarantine took effect and before Governor Cuomo issued his Executive Orders about all voters being supplied with Absentee Ballot applications, and the procedures thereafter.

8. The NYC Board of Elections is not just "ministerial." It is a party which may be sued (in its own name, even in Federal Court, see Farrell v. ), and which has been found by Courts, many times, to have violated voters and candidates' rights. See, i.e. *Matter of Johnson v Lopez-Torres*, 804 N.Y.S.2d 363, 2005 WL 2709344 (N.Y.A.D. 2 Dept., Oct. 21, 2005) (Board required to recanvass affidavit ballots); *Flacks v Board of Elections in City of New York,* 970 N.Y.S.2d 763, 2013 WL 4462028 (N.Y.A.D. 1 Dept., Aug. 14, 2013)(nominating Petition

10

improperly invalidated); *Malikah Shabazz v NYC Board of Elections*, Index No 157686/2017, Slip Opinion dated October 30, 2017, copy annexed as Exhibit G (NYCBOE acted arbitrarily and capriciously by moving polling places from building where several thousand voters lived to a site one mile away).

9. Finally, as to a factual issue, there is the Postal Regulations. Despite the document which the State Defendants annexed to their papers, the **current postal manual** does not require Business Reply Mail to be postmarked. The Manual section which is relevant is annexed as Exhibit H.

Dated: July 23, 2020

/s/Arthur Z. Schwartz