**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Emily Gallagher, Suraj Patel, Katherin Stabile, Jillian Santella, Aaron Seabright, James C. McNamee, Kristin Sage Rockerman, Maria Barva, Miriam Lazewatsky, Myles Peterson, Samantha Pinsky, Christian O'Toole, Tess Harkin, Caitlin Phung, Antonio Pontex-Nunez, *individually, and on behalf of all others similarly situated,* | |
| Plaintiffs, | Docket No. 20-cv-5504-AT |
| v. | |
| New York State Board of Elections; Peter S. Kosinski, Andrew Spano, and Douglas Kellner, *individually and in their official capacities as Commissioners of the New York State Board of Elections*; Todd D. Valentine, Robert A. Brehm, *individually and in their official capacities as Co-Executive Directors of the New York State Board of Elections*; and Andrew Cuomo *as Governor of the State of New York,* | |
| Defendants. | **PLAINTIFFS' PRE-HEARING SUBMISSION** |
| Maria D. Kaufer and Ethan Felder, | |
| Plaintiff-Intervenors, | Hearing Date: July 28, 2020, 9:30 A.M. |
| v. | |
| New York State Board of Elections; Peter S. Kosinski, Andrew Spano, and Douglas Kellner, *individually and in their official capacities as Commissioners of the New York State Board of Elections*; Todd D. Valentine, Robert A. Brehm, *individually and in their official capacities as Co-Executive Directors of the New York State Board of Elections*; and Andrew Cuomo *as Governor of the State of New York*, New York City Board of Elections, Patricia Anne Taylor, *individually and as President of the New York City Board of Elections,* and Michael J. Ryan, *individually and as the Executive Director of the New York City Board of Elections*, | |
| Defendants. | |

1

**I.    Stipulated Facts**

As discussed at the conference held on July 27, 2020, the parties have not been able to confer on stipulated facts.

**II.    Plaintiffs' Witnesses**

    1.    Katherine Stabile

    2.    Emily Gallagher

    3.    Suraj Patel (testimony submitted in the form of declaration with exhibits per ECF No. 48, at 1, bullet 3).

    4.    Mikael Haxby[1]

    5.    Douglas Kellner

    6.    Michael Ryan

    7.    Peter Kosinski (documents only)

    8.    Eddie Banner (Brooklyn Postmaster)

    9.    Marcelina DelPizzo (Manhattan Postmaster)

**III.    Plaintiffs' Exhibits, With Objections.**[2],[3]

| Exhibit | Description | State Objections[4] | City Objections |
|---|---|---|---|
| 1 | Plaintiff Katherine Stabile's Ballot (ECF No. 1-1) | | Object to the statement concerning the date ballot was received as hearsay. (FRE 802) |
| 2 | Fed. R. Ev. 1006 Summary of AD50 No Postmark Ballots (ECF | | Irrelevant. (FRE 402) Ballot envelopes that lacked a postmark and arrived after June 23, 2020, |

---

[1] Per the Court's Individual Practice V(E)(ii), as interpreted to apply in the time frame and remote hearing context at work here, a declaration of Michael Haxby has been provided herewith.

[2] Plaintiffs have subpoenaed certain records exclusively in the control of the City and State Boards, as well as the USPS, and intend to offer those documents – to the extent they are relevant – when they have copies.

[3] A version of this list, without the rest of this pre-hearing submission, was provided to the Court in hard copy per ECF No. 52 and is separately filed

[4] The State Defendants have not responded to our request for their objections, and therefore waive any objections.  See ECF No. 52 at 2, paragraph 1.

|   |   |   |   |
|---|---|---|---|
|   | No. 22-2)[5] |   | were not reviewed for additional deficiencies to determine invalidity. Multiple envelopes are invalid for additional reasons, including the lack of a signature. Additionally, while the summary alleges that signatures are present for virtually all ballots, that is inaccurate. Impossible to determine if summary is accurate as the summary reports in a different order than the underlying documents have been produced. |
| 3 | Fed. R. Ev. 1006 Summary of AD50 Late Postmark Ballots (ECF No. 22-3)[6] |   | Irrelevant. (FRE 402) Ballot envelopes that included a postmark dated after June 23, 2020, were not reviewed for additional deficiencies to determine invalidity. Multiple envelopes are invalid for additional reasons, including the lack of a signature. Additionally, while the summary alleges that signatures are present for virtually all ballots, that is inaccurate. Impossible to determine if summary is accurate as the summary reports in a different order than the underlying documents have been produced. |
| 4 | Post Office Manual 1-1.3 |   | No objection |
| 5 | 9-13-19 – Deposition of Michael Ryan |   | Not relevant (FRE 402) |
| 6 | 7-6-2020 – Bergin Article in Gothamist |   | Hearsay (FRE 402); no objection to quotes from City BOE officials |
| 7 | Wisconsin Elections Commission Report[7] |   | Does not meet the standard for admissibility under FRE 803(8); not relevant (FRE 402); hearsay (FRE 802) |
| 8 | Wisconsin Elections Commission Memo[8] |   | Does not meet the standard for admissibility under FRE 803(8); not relevant (FRE 402); hearsay (FRE 802) |
| 9 | 7-8-2020 – Michael Ryan Email Thread |   | No objection. |

---

[5] Full set of voluminous documents summarized available at https://drive.google.com/file/d/1DZCYKRg2eF2juXtek72_PuMbbOJHL6hx/view?usp=sharing
[6] Full set of voluminous documents summarized available at https://drive.google.com/file/d/1Wsaqjh8iwSD3VLzPkbnmw19AgWrwnqpU/view?usp=sharing
[7] Admissible as a public record exception to the hearsay rule under Fed. R. Ev. 803(8)(A)(iii).
[8] Admissible as a public record exception to the hearsay rule under Fed. R. Ev. 803(8)(A)(iii).

### IV. <u>Written Answers to the Court's Additional Questions, Where Feasible.</u>

Plaintiffs believe written submissions – given the largely legal nature of the Court's questions – may be helpful in answering these questions. Therefore, Plaintiffs offer the following.

**Questions 1, 2, and 3** are questions largely for the State and City Boards that Plaintiffs cannot answer without their input.

**Question 4: Has the state considered any corrective action with respect to the counting of future non-postmarked Ballots?**

Yes, to some degree.

The Governor has taken the view, without much explanation, that he cannot issue an executive order on this issue. *See, e.g.* https://twitter.com/mahoneyw/status/1284213022697955329?s=20 ("The date for the ballots to be eligible is in the law," says the governor … "So that is going to have to be resolved either by a court or by the Legislature passing a new law.").

From the legislature, there are bills that have been introduced (following the filing of this suit) that would provide exactly the relief sought in this case. *See* A10843 ("Notwithstanding any provision of law to the contrary, an absentee ballot for any election held June 23, 2020, received by a board of elections between June 23, 2020 and June 30, 2020 that does not bear or display a dated postmark shall be presumed to have been timely mailed."); *see also* S8367.

Additionally, S8799A has passed both the Assembly and the Senate. By its terms, it only applies to "elections occurring on or after [its] effective date." However, to the Court's question, it specifically amends N.Y. Elec. L. § 8-412 to add the following text (which would be the narrowest of the injunctions requested):

4

> "For purposes of this section, any absentee ballot received by the board of elections by mail that does not bear or display a dated postmark **shall be presumed to have been timely mailed** or delivered if such ballot bears a time stamp of the receiving board of elections indicating **receipt by such board on the day after the election**."

S8799A (emphasis added). The Governor has suggested he may sign a bill *like* this one – *see* https://twitter.com/brigidbergin/status/1285607315396321280 – but has not specifically committed to signing S8799A, as far as we are aware.

**Question 5: If the Court grants the requested injunctive relief, what state agencies would be obligated to implement such relief?**

The State Board would be obligated to, using their powers to, "[f]or example, … set[] the contours for **how County Boards should process** affidavit ballots, perform list maintenance, and run a poll site." *Common Cause/New York v. Brehm*, 432 F. Supp. 3d 285, 289; 319 (S.D.N.Y. 2020) (emphasis added) (ordering State Board to "provide the names of inactive voters registered to vote in a particular election district to the poll workers of that election district"). The State Board can direct local boards on the "rules" for counting ballots, and regularly does. *See, e.g.,* Plaintiffs' Exhibit 9.

Local boards, as in *Common Cause*, are required to follow the State Board's direction – even (or perhaps, especially) when the direction comes at a Court's order. See further, Question 6, below.

**Question 6: Plaintiffs cast their Ballots in New York City. Does the Court have the authority to grant relief with respect to Ballots received by election boards other than the NYCBOE?**

Without question, because the State Board has authority to set the rules for canvassing votes.

Courts have long rejected the kind of demur the State Board has made here. Instead, "[t]he New York State Board of Elections implements state-wide regulations and defines the state's election policies. For example, the State Board sets the contours for how County Boards should process affidavit ballots, perform list maintenance, and run a poll site." *Common Cause/New York v.*

5

*Brehm*, 432 F. Supp. 3d 285, 289 (S.D.N.Y. 2020) (ordering the State Board, with relief ultimately to be implemented by local boards, to ensure local boards all provide lists of inactive voters to poll workers). As the City Board itself explains, "the NYCBOE may only look to determine if the postmark is present and, if so, the date of such postmark. It must then apply the Election Law to the documents before it. It has no authority to disregard clear statutory mandates."[9] ECF No. 34 at 9.

Rather, the State Board – since it provides binding guidance to the local boards – is the only correct target of a state-wide injunction. The Second Circuit and district courts throughout New York all reach this result. *Schulz v. Williams*, 44 F.3d 48, 61 n.13 (2d Cir. 1994) ("[u]nder New York law, the state Board has jurisdiction of, and is responsible for, the execution and enforcement of statutes governing campaigns, elections and related procedures. The state Board's members therefore have the requisite special relation to the contested provision to render them proper defendants" in cases of this kind.), *citing* N.Y. Elec. L. § 3-104; *Green Party v. Weiner*, 216 F. Supp. 2d 176, 185 (SDNY 2002) ("Wilkey argues that under New York Election Law, the State Board is responsible only for administering access to the ballot, whereas local election boards have sole responsibility for administering elections [and therefore] the State Board cannot implement the relief which plaintiffs seek … Wilkey's argument lacks merit.") (cleaned up); *Donohue v. Board of Elections of N.Y.*, 435 F. Supp. 957, 963 (E.D.N.Y. 1976) (rejecting argument that "the action should be dismissed for plaintiffs' failure to join all fifty-seven County Boards of Election, as well as the Democratic Presidential electors, as necessary parties").

Notably, neither the City Board (ECF No. 34 at 5) nor the State Board (ECF No. 17 at 8-9) have cited a single case that requires the presence of local boards of election in a suit seeking state-

---

[9] The City Board's further statement that "nor does the State Board have such authority" would suggest this Court has no authority to ever enjoin unconstitutional election laws. That is wrong: the City is right that it lacks authority to disregard the State Board's interpretation of the Election Law, but is wrong that the State Board has no obligation to consider constitutional limitations on the Election Law – and even then, is facially incorrect that "clear statutory mandates" that produce unconstitutional results cannot be enjoined.

wide relief (we are aware of no such case), and their citations only cover the generic rules for necessary parties.

In sum: This Court, under *Schulz*, *Common Cause*, *Weiner*, and *Donohue*, absolutely has the authority to grant relief with respect to Ballots received by election boards other than the City Board.[10]


**Question 7: Do the prudential considerations outlined by the Supreme Court in *Republican National Committee v. Democratic National Committee*, 140 S. Ct. 1205 (2020), apply with equal force to this post-election day challenge?**

They do not.

In a post-election day challenge, because the injunction here cannot result in any "judicially created confusion," have no force at all. *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) ("*RNC*"). As far as we are aware, the only case to address the Court's question in any way is *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 244-45 (6th Cir. 2011).

By way of background, *RNC*'s prudential considerations draw on the "*Purcell* principle," from the *per curiam* opinion in *Purcell v. Gonzalez*: *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) (discussing "the *Purcell* principle, which seeks to avoid … judicially created confusion" involved in voters learning of election results *before voting*). As explained in *Purcell* itself:

> "Court orders affecting elections, especially conflicting orders, can themselves **result in voter confusion and consequent incentive to remain away from the polls**. As an election draws closer, that risk will increase."

*Purcell v. Gonzalez*, 549 U.S. 1, 4-5, 127 S. Ct. 5, 7 (2006) (emphasis added). *See also, Veasey v. Perry*, 574 U.S. 951, 953 (2014) ("any voter confusion or lack of public confidence in Texas' electoral processes is in this case largely attributable to the State itself"), *cited in RNC on this issue* at 1207. As

---

[10] Relatedly, the City Board is not technically a defendant as far as Plaintiffs' claims are concerned, for exactly this reason. The City Board and its members are relevant witnesses, to be sure, but their presence in the case is unnecessary for complete relief.

the Supreme Court has explained, "*Purcell* held only that courts must take careful account of considerations specific to election cases, not that election cases are exempt from traditional stay [or injunction] standards." *Veasey v. Perry*, 574 U.S. 951, 952 (2014).

In a post-election context, as explained by the Sixth Circuit in *Hunter*, the prudential calculus is completely different: when the question is not how an election is conducted *ex ante*, but how ballots are tallied after the election is complete, voter confusion is simply no longer a risk. *Hunter v. Hamilton Cty. Bd. of Elections*, 635 F.3d 219, 244-45 (6th Cir. 2011), *discussed in* ECF No. 22 at 15. As the Sixth Circuit put it:

> "Because this election has already occurred, we need not worry that conflicting court orders will generate voter confusion and consequent incentives to remain away from the polls. To the contrary, counting the ballots of qualified voters miscast as a result of poll-worker error may enhance confidence in the integrity of our electoral processes, which is essential to the functioning of our participatory democracy."

In short, once an election has already occurred, and ballots are all in the hands of the Board, there is no longer *any* cognizable risk of voter confusion. If that is so, none of the prudential concerns – concerns based on "voter confusion" and "incentive to remain away from the polls" – of the *Purcell* principle counsel against providing relief. Those concerns do not have anything to do with whether the Board should open and tally already duly cast ballots, because such tallying would not impact any decision by any voter.

In fact, conceived properly (again, as the Sixth Circuit recognized), the prudential concerns in *Purcell* (and therefore, in *RNC*) cut exactly the opposite way here than they did in *RNC*. That is, while the Court "need not worry that conflicting court orders will generate voter confusion and consequent incentives to remain away from the polls," it still ought to worry that not "counting the ballots of qualified voters [invalidated] as a result of poll-worker [or USPS worker] error" will serve to diminish "confidence in the integrity of our electoral processes, which is essential to the functioning of our participatory democracy." *Hunter*, 635 F.3d at 244 (alterations adopted), *citing*

8

*Purcell* at 4-5.

Keeping in mind the Second Circuit's admonition that voting restrictions are "not evaluated in isolation, but within the context of the state's overall scheme of election regulations," *Lerman v. Bd. of Elections*, 232 F.3d 135, 145 (2d Cir. 2000), it is also relevant that New York's Election Law scheme routinely has candidates litigating over the counting of ballots long past election day (as the City Board mentioned in the July 27, 2020 conference held by the Court). Whether that is a wise policy decision is debatable, but it *is* the policy choice New York has made. There is no reason such a challenge should be available for counting errors that constitute ballot-by-ballot noncompliance with state law, but not for counting errors that constitute broad non-compliance with the constitution.

DATED:   July 28, 2020
         Queens, NY

                                                  /s/
                                        _____
                                        J. Remy Green
                                        **COHEN&GREEN P.L.L.C.**
                                        1639 Centre Street, Suite 216
                                        Ridgewood, New York 11385
                                        (929) 888.9480 (telephone)
                                        (929) 888.9457 (facsimile)
                                        remy@femmelaw.com

                                        *Attorneys for Plaintiffs*

9