

September 4, 2020

Hon. Analisa Torres, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square, Room 15D
New York, NY 10007

By Electronic Filing and Email.

　　　　Re:　　Subsequent Factual Development in
　　　　　　　Gallagher et al. v. New York State Board of Elections et al., 20-cv-5504

Dear Judge Torres:

　　　　I write briefly to identify and bring a relevant document to the Court's attention.[1]  Defendants assert that "Plaintiffs are wrong to suggest that systemic USPS errors are inevitable" and that the Court should not conclude "that the General Election will necessarily be subject to [similar] systemic USPS errors" to the ones that drove the Court's conclusion.  ECF No. 103 at 4.  However, just this Wednesday, Commissioner Kellner testified to a likelihood that the same issues will not only recur, but may get worse.

　　　　On Wednesday, New York State filed a motion for a preliminary injunction in *New York v. Trump* and filed the attached declaration by Commissioner Kellner and exhibit.  Commissioner Kellner notes that on August 10 last month, the State Board "asked the U.S. Postal Service how they plan to address past failures in the postmarking, delivery and collection of absentee ballots," but "[d]espite the urgency of these issues, [the Board has] not received any response from the U.S. Postal Service to date."  Kellner Declaration ¶¶ 25-27.  Commissioner Kellner concludes that "[a]ny U.S. Postal Service delays or inefficiencies **will compound** the challenges experienced by the State Board during the June 2020 primary, including the failure of the U.S. Postal Service to properly postmark absentee ballots, thereby leading to the invalidation of ballots"  *Id.* ¶ 24 (emphasis added).  *See also*, Kellner Ex. 1 at 1-2.

　　　　The Kellner Declaration became public after we filed our initial letter.  Obviously, had it been available, it would have been central in our letter.  I sent the declaration to counsel yesterday, highlighting exactly these facts, and fully expected this would be the kind of fact that counsel would attempt to address.  Given its absence in Defendants' letter, however, I believe this qualifies as a development important enough to warrant a supplemental filing.

---

[1] While we object to much in Defendants' letter, this letter is purely limited to identifying sworn testimony by Commissioner Kellner that Defendants did not mention.



Respectfully submitted,

/s/
_____

J. Remy Green
    *Honorific/Pronouns: Mx., they/their/them*
**COHEN&GREEN P.L.L.C.**
1639 Centre St., Suite 216
Ridgewood, New York 11385
remy@femmelaw.com

*Attorneys for Plaintiffs*

Enclosure.

cc:
All relevant parties by ECF and Email.

Cohen&Green P.L.L.C.  · 1639 Centre Street, Suite 216 · Ridgewood, New York · 11385  · t : (929) 888.9480 · f : (929) 888.9457 · FemmeLaw.com

# Exhibit 9

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

STATE OF NEW YORK, et al.,

               Plaintiffs,

      v.

DONALD J. TRUMP, et al.,

               Defendants.

Case No. 20 Civ. 2340

DECLARATION OF DOUGLAS KELLNER

Pursuant to 28 U.S.C. § 1746(2), I, Douglas Kellner, hereby declare as follows:

1.      I am over the age of eighteen and have personal knowledge of all the facts stated herein.

2.      I have served as a Commissioner and the Co-Chair of the New York State Board of Elections ("State Board") since 2005. Before assuming my present position on the State Board, I was a commissioner of the New York City Board of Elections from 1993 until my appointment to the State Board in 2005. I also serve as the New York State representative to the Standards Board of the United States Election Assistance Commission.

### Background on New York's Election System

3.      As of the last official enrollment publication in February 2020, there were 12,971,543 voters registered in New York – 11,701,136 active voters and 1,270,407 inactive voters.

4.      New York's general elections are administered by its 58 bipartisan boards of elections consisting of a board of elections for each county in the state and a single board of

1

elections for New York City, pursuant to Election Law § 3- 200 *et seq.*  The State Board has

significant authority to promulgate policies, regulations and instructions as to the administration

of elections generally, and many of these powers are enumerated in N.Y. Election Law § 3-102.

As provided by Article 9 of N.Y. Election Law, the State Board's function in the canvass of

ballots is to receive the results of each county's canvass and tabulate them as to statewide and

cross-county elections.

5.       New York's city and county boards of elections are responsible for preparing

ballots, distributing them to voters and canvassing those ballots in accordance with law and any

applicable directive, regulations and policies of the State Board.

6.       The State Board is comprised of four commissioners, two from each major

political party (defined as the parties that receive the highest and second highest number of votes

for its candidate in the preceding gubernatorial election).

### Background on New York's Election Laws

7.       New York provides three options for voting.  A New York voter can cast a ballot

at a polling place on Election Day, N.Y. Elec. Law § 8-300 *et seq.*, vote at an early voting site

over the course of nine days ending on the Sunday before Election Day, N.Y. Elec. Law § 8-600

*et seq.*, or vote by absentee ballot, N.Y. Elec. Law § 8-400 *et seq.*

8.       New York law provides for absentee voting as an exception to in-person

voting, available upon application to voters who by reason of disability, illness, absence or being

detained in jail cannot attend the polls.  *See, e.g.*, N.Y. Elec. Law§ 8-400 *et seq.* (civilian

voters); § 10-102 *et seq.* (military voters); § 11-200 *et seq.* (overseas voters).

9.       Absentee ballots can be returned to the voter's local board of elections either in

person or by mail.  In person, an absentee ballot must be delivered to the local board of elections,

or to the inspectors of elections at a poll site, before the close of polls on Election Day.  If returned by mail, a completed absentee ballot must be mailed to the voter's local board of elections, and must arrive either before the close of polls on Election Day, or within seven days after Election Day provided it has a postmark of not later than the day of the election.  For the November 3, 2020 general election, the postmark deadline is November 3, 2020 and the receipt deadline is November 10, 2020.  N.Y. Elec. Law § 8-412i(1).

10.     In a typical election, 3% to 10% of participating voters cast absentee ballots.  For example, during the presidential primary of 2016, the number of absentee ballots returned/cast was 118,578 (157,885 were sent out), which was 4.09% of the 2,892,671 votes cast.

### The June 2020 Primary Election

11.     As part of the response to the ongoing COVID-19 pandemic, legislation and executive orders significantly expanded access of absentee balloting for the June 23, 2020 primary elections and made the application process and return of ballots easier.  *See e.g.,* Executive Orders 202.15,[1] 202.23,[2] 202.26.[3]  Specifically, New Yorkers may now request an absentee ballot based on "temporary illness" by reason of "the potential for contraction of the COVID-19 virus."  Executive Order 202.15;[4] codified by Chapter 139 of Laws of 2020 (defining "illness" as including instances where a voter is unable to appear personally at a polling place because there is a risk of contracting or spreading a disease-causing illness to the voter or to other members of the public).  Consequently, the number of voters who voted by absentee ballot

---

[1] Exec. Order No. 202.15 (Apr. 9, 2020), https://www.governor.ny.gov/news/no-20215-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.
[2] Exec. Order No. 202.23 (Apr. 24, 2020), https://www.governor.ny.gov/news/no-20223-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.
[3] Exec. Order No. 202.26 (May 1, 2020), https://www.governor.ny.gov/news/no-20226-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.
[4] Exec. Order No. 202.15 (Apr. 9, 2020), https://www.governor.ny.gov/news/no-20215-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

at the June 23, 2020 primary elections was at least six times the number for the same election in 2016, and because some voters received two ballots (one for the presidential primary and one for a local primary), the number of ballots received by mail and processed by boards of elections was even more.  Based on voter history data provided by counties, nearly 40% of all ballots cast in the June primary were by absentee.

12.     Election officials and voters, relying heavily on absentee ballots transmitted by postal mail, saw significant issues during the June 2020 primary elections.

13.      For example, according to State Board records, one issue that arose was a breakdown of the postal processes, primarily in Brooklyn, resulting in more than 4,800 New Yorkers' returned absentee ballots not receiving a postmark.  Thus, because such ballots did not meet a legal requirement in the election law, they were initially rejected and not counted in the election.  I have also been made aware through public complaints and communications with voting rights advocates based in New York that some voters did not receive their absentee ballots by Election Day.  If voters did not receive their absentee ballots in time, they may have missed the opportunity to vote early because they were waiting for their absentee ballot to arrive in the mail.  If they did not vote absentee, and did not vote early, the only option these voters would then have is to vote in person at their poll site.

14.     Due to this, additional voters went to polling places who would not have otherwise needed to, adding to significant crowds and delays at certain polling sites for in-person voting.  Longer wait times at polling sites is of particular concern to election officials as this increases the risk of exposure to COVID-19, thereby threatening the health and safety of voters, voting officials and the larger community.

15.     Preparing for in-person voting during the ongoing COVID-19 pandemic requires

significant resources from the State Board and local boards of election, in order to ensure that individuals who need to vote in person could do so safely.  In the weeks and months leading up to the June 2020 primary, this included ensuring that poll workers had adequate personal protective equipment to use and distribute to voters at poll sites, spacing out voting equipment and lines, and other measures, such as relocating poll sites from high-risk locations like nursing homes and senior residences.

### The November 2020 General Election

16.    Looking toward November, New York State has taken many steps to provide additional avenues to make absentee voting more available at the general election.  The State Board will be relying on the U.S. Postal Service mail system to transmit absentee ballots and other election materials to an even greater extent.

17.    For example, Executive Order 202.58 ("EO 202.58"), issued on August 24, 2020, requires New York's local board of elections to send an informational mailing to nearly 13 million voters by September 8, 2020 outlining all of their options for voting, including "expected mail times, if a voter chooses to request an absentee ballot."[5]  EO 202.58 also requires the State Board to "develop a uniform envelope for use by Boards of Elections" for absentee ballots.[6]  The State Board may also email accessible ballots to voters with disabilities to vote privately by absentee ballot.  These ballots are all returned by mail.  Further, new legislation temporarily provides that any absentee ballot shall be presumed to be timely even if it does not bear a dated postmark if such ballot was received and time-stamped by the day after Election Day.  *See* 2020 N.Y. Laws Chapter 140.

---

[5] Exec. Order 202.58 (Aug. 24, 2020), https://www.governor.ny.gov/news/no-20258-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.
[6] *Id.*

18.     Voters requesting an absentee ballot by mail must make the request no later than the seventh day before the election, which is October 27, 2020.

19.     Based on the June 2020 primary and special elections this year, the election officials expect nearly *half* of all voters in the November 3, 2020 general election will vote absentee.  This will correspond to millions of votes by mail.

### New York's State Board Will Be Harmed by the U.S. Postal Service Delays

20.     More voters will rely on the U.S. Postal Service for the exercise of their fundamental right to vote in November's general election than any election in the state's history. Consequently, the State Board will be forced to rely on the U.S. Postal Service more than ever before.

21.     Mail delays risk jeopardizing the State Board's ability to administer elections, by threatening the timely delivery and return of absentee ballots.

22.     Because there is no practical alternative to deliver these ballots, the U.S. Postal Service delays, if unaddressed, may interfere with the State Board's ability to ensure that every vote is counted.

23.     The importance of timely delivery of mail is magnified in light of the pandemic in which the reason many people are voting absentee is to avoid potential exposure to COVID-19.

24.     Any U.S. Postal Service delays or inefficiencies will compound the challenges experienced by the State Board during the June 2020 primary, including the failure of the U.S. Postal Service to properly postmark absentee ballots, thereby leading to the invalidation of ballots.

25.     Board of Elections officials are deeply concerned about the impact that inefficient and inadequate U.S. Postal Service services may have on the general election.  So much so, that on August 11, 2020, State Board officials contacted Dane Coleman, Vice President for Regional

Processing Operations, Eastern, at the U.S. Postal Service regarding the U.S. Postal Service's plan for administering absentee ballots come November (Ex. 1).

26.    In this letter, we asked the U.S. Postal Service how they plan to address past failures in the postmarking, delivery and collection of absentee ballots.  Despite the urgency of these issues, we have not received any response from the U.S. Postal Service to date.

27.    Election officials fear that U.S. Postal Service delays may lead to voters not receiving their absentee ballots on time, missing the window for early voting, and then rushing to vote in-person on Election Day.  Like the June 2020 primary elections, election officials must again devote significant resources to ensure that large numbers of voters, including those who do not receive their absentee ballots in the mail, can vote safely on Election Day.  Election officials are purchasing personal protective equipment, coordinating staffing and poll site issues, and intend to space out voting equipment and lines to provide for social distancing.

28.    Elections officials are gravely concerned about over-crowding and wait times that could occur due to unexpected increases in in-person voting on Election Day.  This eventuality would not only burden election administration and staffing capacity, but also, threatens the public health by increasing exposure to COVID-19.


I declare under penalty of perjury that, to the best of my knowledge, the foregoing is true and correct.


_Douglas A. Kellner_
_____

DOUGLAS A. KELLNER


Executed on this 28th day of August, 2020

# Exhibit 1



**NEW YORK STATE** | **Board of Elections**

Peter S. Kosinski
  Co-Chair

vacant
  Commissioner

Todd D. Valentine
  Co-Executive Director

Douglas A. Kellner
  Co-Chair

Andrew J. Spano
  Commissioner

Robert A. Brehm,
  Co-Executive Director

## STATE BOARD OF ELECTIONS
**40 NORTH PEARL STREET, 5ᵗʰ FLOOR**
**ALBANY, N.Y. 12207-2729**
**Phone: 518/474-8100   Fax: 518/474-1008**
**www.elections.ny.gov**

August 10, 2020

Dane Coleman
Vice President, Regional Processing Operations, Eastern
United States Postal Service
Via email: Dane.A.Coleman@USPS.gov

*Re:*    Absentee Ballot Issues for the November 3, 2020 General Election

Dear Mr. Coleman:

First, we would like to thank you for the collaboration your office provided regarding the June 23, 2020 primary and special election. Due to the COVID-19 pandemic, local boards of elections were required to send all eligible voters an absentee ballot application with a postage paid envelope and to those who applied, an absentee ballot with a return postage paid envelope. Heavy collaboration between USPS and NSYBOE was successful in setting up business reply accounts and first-class election business reply envelopes.

Your office's assistance with setting up election business mail envelopes to ensure envelopes get postmarked or ensuring ballots get delivered to voters, was essential in making the June 23, 2020 primary and special election work. Thank you for your assistance.

As you know, the November 3, 2020 general election is going to occur in less than three months. This is a presidential election year, which historically sees a significant increase in voter participation. That combined with the continued concerns regarding the COVID-19 pandemic, as such, we expect the number of absentee ballot applications and ballots for the November election to be at increased levels. Given this, several issues must be addressed for the November 2020 election.

1) Under New York law postmarking absentee ballot envelopes is essential in determining whether an absentee ballot was timely mailed back to the boards of election by the voter. A lack of a postmark for a timely mailed ballot will result in voters' ballots not being counted, and our efforts should focus on preventing such disenfranchisement.

While most postal facilities throughout the state did not have significant issues in relation to ballot envelopes not having a postmark (e.g. the Bronx had 67 without a postmark; Manhattan had 89; Queens had 69: and Staten Island had 84), Brooklyn, however, appeared to have a significant issue in placing postmarks on absentee ballot envelopes. According to our records,

4,886 ballot envelopes did not have a postmark.  That is an unacceptably high number.  In fact, this was subject to litigation, where a federal judge found that such a discrepancy was unconstitutional under the Equal Protection clause, as voters in the Bronx and Manhattan did not have anywhere near as many postmark "failures" as Brooklyn.  *See Gallagher v New York State Bd. of Elections*, 20 CIV. 5504 (AT), 2020 WL 4496849 [SDNY Aug. 3, 2020].

In looking forward to the November 3, 2020 election, we ask what steps is USPS going to take to ensure this failure does not happen again?

2)  In addition to the Brooklyn failure above, we have received complaints from upstate counties that a number of absentee ballots did not have a postmark, presumably due to mechanical or human error.  What protocol is going to be put in place to minimize such errors?

3)  We have received complaints from some voters that when they requested a hand postmark on their absentee ballot, postal staff refused.  *See* attached email from a voter regarding a post office in Fulton County.   How is your office going to notify and train staff to place postmarks on election mail when a voter makes a request?

4)  During the 2017 November election, there was an incident where large batches of absentee ballot envelopes in Brooklyn where not delivered to the New York City Boards of Elections until well after the election (April 24 and 25, 2018).  Your letter to the New York City board indicates that the local post office anticipated a continuation of a verbal agreement, where the city board would pick up the ballots.  What protocol will be put into place in regard to timely handling election mail for 2020?

As we stated earlier, the number of absentee applications and ballot envelopes going through the post office is likely to reach an unprecedented level this election season.  As with all presidential elections voter participation will be especially high this election year.  While the post office handled a lot of mail for the June 23, 2020 primary election, the volume of election mail for the November 3, 2020 general election will be much higher.  To ensure every New Yorker's right to vote, we ask for responses to the questions regarding election mailings as soon as possible.

Again, thank you for your assistance, and we look forward to working with you in the near future.

Sincerely,

Robert A. Brehm
Co-Executive Director

Todd D. Valentine
Co-Executive Director

## Quail, Brian (ELECTIONS)

| | |
|---|---|
| **From:** | Conklin, John (ELECTIONS) |
| **Sent:** | Monday, June 22, 2020 7:45 PM |
| **To:** | Jackson, Leonetta J - Washington, DC;Ramsey, Tiffany M - Syracuse, NY;Darrah, Statia L - Glens Falls, NY |
| **Cc:** | Brehm, Robert (ELECTIONS);Valentine, Todd (ELECTIONS);Couser, Cheryl (ELECTIONS);lhollenbeck@fultoncountyny.gov;jzawadski@fultoncountyny.gov;cspraker @fultoncountyny.gov;RWEIDERMAN@FULTONCOUNTYNY.GOV |
| **Subject:** | RE: Post Marking |

Thank you very much for the quick response.

Have a good evening.

Sincerely yours,

*J. Conklin*

Director of Public Information
Records Access Officer
NYS Board of Elections
40 North Pearl Street, 5th Floor
Albany, NY 12207-2109
518-474-1953
John.Conklin@elections.ny.gov
www.elections.ny.gov



**From:** Jackson, Leonetta J - Washington, DC <Leonetta.J.Jackson@usps.gov>
**Sent:** Monday, June 22, 2020 7:34 PM
**To:** Conklin, John (ELECTIONS) <John.Conklin@elections.ny.gov>; Ramsey, Tiffany M - Syracuse, NY
<Tiffany.M.Ramsey@usps.gov>; Darrah, Statia L - Glens Falls, NY <Statia.L.Darrah@usps.gov>
**Cc:** Brehm, Robert (ELECTIONS) <Robert.Brehm@elections.ny.gov>; Valentine, Todd (ELECTIONS)
<Todd.Valentine@elections.ny.gov>; Couser, Cheryl (ELECTIONS) <Cheryl.Couser@elections.ny.gov>;
lhollenbeck@fultoncountyny.gov; jzawadski@fultoncountyny.gov; cspraker@fultoncountyny.gov;
RWEIDERMAN@FULTONCOUNTYNY.GOV
**Subject:** Re: Post Marking

ATTENTION: This email came from an external source. Do not open attachments or click on links from unknown senders or unexpected emails.

John

1

The Area Leadership will speak to the local Postmasters tomorrow.

Thanks for bringing this to our attention.

Leonetta Jackson
████████████

---

**From:** Conklin, John (ELECTIONS) <John.Conklin@elections.ny.gov>
**Sent:** Monday, June 22, 2020 7:17:58 PM
**To:** Ramsey, Tiffany M - Syracuse, NY <Tiffany.M.Ramsey@usps.gov>; Darrah, Statia L - Glens Falls, NY <Statia.L.Darrah@usps.gov>; Jackson, Leonetta J - Washington, DC <Leonetta.J.Jackson@usps.gov>
**Cc:** Brehm, Robert (ELECTIONS) <Robert.Brehm@elections.ny.gov>; Valentine, Todd (ELECTIONS) <Todd.Valentine@elections.ny.gov>; Couser, Cheryl (ELECTIONS) <Cheryl.Couser@elections.ny.gov>; lhollenbeck@fultoncountyny.gov <lhollenbeck@fultoncountyny.gov>; jzawadski@fultoncountyny.gov <jzawadski@fultoncountyny.gov>; cspraker@fultoncountyny.gov <cspraker@fultoncountyny.gov>; RWEIDERMAN@FULTONCOUNTYNY.GOV <RWEIDERMAN@FULTONCOUNTYNY.GOV>
**Subject:** [EXTERNAL] FW: Post Marking

**CAUTION**: This email originated from outside USPS. **STOP and CONSIDER** before responding, clicking on links, or opening attachments.

FYI.

Please see below, voter refused postmark after requesting it.

If you have any additional questions, please let me know.

Sincerely yours,

*J. Conklin*

Director of Public Information
Records Access Officer
NYS Board of Elections
40 North Pearl Street, 5th Floor
Albany, NY 12207-2109
518-474-1953
John.Conklin@elections.ny.gov
www.elections.ny.gov





---

**From:** Richard Kruger <████████████>
**Sent:** Monday, June 22, 2020 6:07 PM
**To:** ElectionInfo@boe.nyc.ny.us; ele.sm.info <info@elections.ny.gov>
**Subject:** Fwd: Post Marking

Hello,

When I took my absentee ballot to the Post Office in Caroga Lake, NY they refused to post mark it as it is business reply mail.

This was even after I specifically requested a post mark.

Is this how it is supposed to work? If not, someone should tell the Post Office.

Thanks,

Richard Kruger

--

_____

Richard Kruger