**STATE OF NEW YORK**
**OFFICE OF THE ATTORNEY GENERAL**

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

September 25, 2020

**By ECF and E-Mail**

Hon. Analisa Torres, U.S.D.J.
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re:    *Gallagher, et al., v. New York State Board of Elections, et al.,* **20-cv-5504 (AT)**
             **Pre-Motion to Dismiss Letter**

Dear Judge Torres:

      The New York State Office of the Attorney General represents Defendants New York State Board of Elections ("State Board"), Commissioners Peter S. Kosinski, Andrew Spano, and Douglas Kellner, Co-Executive Directors Todd D. Valentine and Robert A. Brehm ("State Board Defendants"), and Governor Andrew Cuomo (collectively, "State Defendants"), in this matter. Pursuant to the Court's Individual Practices, the State Defendants write to request permission to file a motion to dismiss the First Amended Complaint. ECF No. 109 ("Am. Compl."). Because the arguments supporting the motion to dismiss will largely overlap with the State Defendants' arguments in opposition to Plaintiffs' second motion for a preliminary injunction, the State Defendants request permission to file a consolidated brief on the schedule already set by the Court for the preliminary injunction motion. ECF No. 105. A proposed briefing schedule is set forth below.

      Pursuant to the Court's Individual Rule III.B, the State Defendants sent Plaintiffs a letter providing notice of their intent to seek permission to file a motion to dismiss the original complaint in this action. In response, Plaintiffs filed an amended complaint and sought leave to file a second amended complaint. ECF Nos. 109-110. The State Defendants thereafter informed Plaintiffs of the grounds for dismissal of the amended complaints and that they still intended to file a motion to dismiss.

      **A.  Background**

      In their first complaint and motion for a preliminary injunction in this action, Plaintiffs alleged that they participated in New York's June 23, 2020 primary election ("June 2020 Primary") as voters and candidates. Compl. ¶¶ 11-26. Plaintiffs alleged that the United States Postal Service ("USPS") failed to apply accurate postmarks to their absentee ballot envelopes, allegedly as a consequence of a COVID-19 related Executive Order that required local boards of election to provide voters with

Hon. Analisa Torres
September 25, 2020
Page 2

postage prepaid return envelopes for the June 2020 Primary. *Id.* ¶¶ 1-5. Plaintiffs alleged that their ballots were deemed invalid pursuant to the postmark requirement of New York Election Law § 8-412 ("Postmark Rule") because they arrived at the New York City Board of Elections after Election Day without an accurate postmark. *Id.* ¶ 45.

Following an evidentiary hearing, on August 3, 2020, the Court issued an Opinion and Order granting a preliminary injunction. *Gallagher v. New York State Bd. of Elections*, No. 20 CIV. 5504 (AT), 2020 WL 4496849 (S.D.N.Y. Aug. 3, 2020) ("PI Order"). The Court found that, contrary to Plaintiffs' assertions, USPS policy is to apply postmarks to all election mail, including postage prepaid absentee ballots. *Id.* at *4. The Court declined to rule on the issue of whether "§ 8-412's requirement that ballots be postmarked is constitutional in the abstract . . . ." *Id.* at *16. However, the Court found that the Postmark Rule was unconstitutional as applied to the June 2020 Primary because possible "human or mechanical error" at certain USPS facilities in Brooklyn caused "thousands of ballots, constituting a significant percentage of the total ballots cast in certain races" to be rendered invalid, which amounted to a "systemic problem" that implicated Plaintiffs' constitutional rights. *Id.* at *5 & *16-17.

On September 11, 2020, Plaintiffs filed the Amended Complaint. The Amended Complaint alleges that "there is a high likelihood the exact same—or at least, similar—issues" affecting USPS postmarking and mail handling "will recur" in the November 2020 General Election ("General Election") and in all future elections. Am. Compl. ¶¶ 121-22. Plaintiffs allege that the Postmark Rule itself violates the First Amendment facially and as applied to the General Election, and that it violates the Equal Protection Clause and Due Process Clause as applied to the General Election. *Id.* ¶¶ 116-57.

Meanwhile, in the weeks since the June 2020 Primary, Governor Cuomo and the New York Legislature enacted a series of wide-ranging election reform laws and Executive Orders designed to expand access to absentee voting, ensure a streamlined absentee ballot application process, provide voters with multiple options for returning ballots, and publicize information about deadlines and expected mail times. *See* State Defendants' Sept. 4, 2020 Letter at 3-4 (ECF No. 103).[1] Executive Order 202.26, the prepaid postage provision that Plaintiffs alleged caused USPS to fail to postmark their ballots in the June 2020 Primary, has expired.

### B. Grounds for the Motion to Dismiss

The substantive claims in the Amended Complaint should be dismissed because Plaintiffs' claims regarding future elections do not establish an Article III case or controversy, and the Amended Complaint fails to state a claim.[2]

---

[1] Governor Cuomo recently signed an additional Executive Order requiring local boards to establish a dedicated absentee ballot drop-off. *See* Executive Order 202.61 (Sept. 9, 2020), available at https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.61.pdf.

[2] If the State Defendants' motion is granted, the only potential issue remaining in the case would be Plaintiffs' claim for attorney's fees with respect to the relief awarded by the PI Order. Plaintiffs may not pursue claims against State officials for declaratory relief for alleged past violations of federal law. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).

*No Case or Controversy*. The Court does not have subject matter jurisdiction over Plaintiffs' prospective claims because Plaintiffs lack standing. To establish Article III standing, the plaintiff must allege an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal citation omitted). A "threatened injury must be *certainly impending* to constitute injury in fact," and therefore "[a]llegations of *possible* future injury are not sufficient." *Id.* (internal quotation marks and citations alterations omitted)(emphasis in original). In the context of the administration of elections, courts routinely dismiss complaints based on a voter's prospective concerns that their vote might not be counted. *See, e.g.*, *Schulz v. Kellner*, No. 1:07-CV-0943 (LEK) (DRH), 2011 WL 2669456, at *7 (N.D.N.Y. July 7, 2011) (allegations that error would cause votes to not be counted accurately were "merely conjectural and hypothetical and do not demonstrate a concrete or particularized injury to Plaintiffs"). Further, "a voter fails to present an injury-in-fact when the alleged harm is abstract and widely shared." *Id.* at *6 (quoting *Crist v. Comm'n on Presidential Debates,* 262 F.3d 193, 195 (2d Cir.2001)).

The allegations in the Amended Complaint are based on a series of speculations about what *might* occur in the General Election and beyond. Plaintiffs allege that they plan to vote by absentee ballot, and might suffer an injury if *all* of the following conditional events occur: (1) they choose to return their absentee ballot by mail, rather than via the multiple, non-USPS options the State Defendants have made available; (2) USPS inadvertently fails to properly apply a postmark to their specific ballot;[3] *and* (3) the ballot arrives at the local board of elections between two and seven days after Election Day, despite the multiple reforms instituted by the State Defendants to facilitate and encourage voters to return absentee ballots well in advance of the election. That speculative series of events is not certainly impending.

While the PI Order found that Plaintiffs established standing to pursue their claims with respect to the June 2020 Primary, that does not confer standing as to the Amended Complaint's new claims for prospective relief because "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). *See also Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) ("a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought") (internal citation omitted).

For similar reasons, the claims in the Amended Complaint are not ripe for adjudication. *See Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 688 (2d Cir. 2013) ("to say a plaintiff's claim is constitutionally unripe is to say the plaintiff's claimed injury, if any, is not 'actual or imminent,' but instead 'conjectural or hypothetical'") (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

*Failure to State a Claim*. Even if Plaintiffs could meet the constitutional case or controversy requirement, none of the substantive claims for relief in the Amended Complaint state a claim as to which relief may be granted.

---

[3] Historically, the State Board has noted a USPS postmark error rate of less than 0.15%. *See* Supplemental Declaration of Robert Brehm ¶ 6 (ECF No. 67).

Hon. Analisa Torres
September 25, 2020
Page 4

As to the First Amendment claim, Plaintiffs argue that strict scrutiny applies to the Court's analysis of the Postmark Rule because "[t]he burden on voters of having their votes simply tossed aside is severe . . . ." Am. Compl. ¶ 119. But that overbroad assertion is based on the "erroneous assumption that a law that imposes any burden upon the right to vote must be subject to strict scrutiny." *Burdick v. Takushi*, 504 U.S. 428, 432 (1992). Contrary to the Amended Complaint, the standard is that where "a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." *Id.* at 434. The Postmark Rule is such a reasonable, nondiscriminatory rule: it merely requires that for those absentee ballots received by local boards after Election Day, there must be objective evidence that the ballots were cast on or before Election Day. This is a common rule among those states that permit late-arriving ballots, and as the Court already held, "the state has a legitimate interest in ensuring that all ballots are cast before the polls close on Election Day." *Gallagher*, 2020 WL 4496849, at *16.

Nor is the Postmark Rule unconstitutional as applied to the General Election. This claim is based on Plaintiffs' prediction that their General Election ballots will necessarily be subject to systemic USPS postmark errors of the type seen in the June 2020 Primary. There are no specific allegations supporting that conclusion, not least because recent USPS service changes have been enjoined by two nationwide preliminary injunctions. *See Jones v. United States Postal Service*, No. 20-cv-6516 (VM), 2020 WL 5627002 (S.D.N.Y. Sept. 21, 2020); *Washington v. Trump*, No. 1:20-CV-03127-SAB, 2020 WL 5568557 (E.D. Wash. Sept. 17, 2020). New York is seeking similar relief in *New York, et al. v. Trump, et al.*, 20-cv-2340 (D.D.C.).

The Equal Protection claim fails because Plaintiffs have not alleged any facts supporting their conjecture that the Postmark Rule will apply differently to them as compared to any other voter in the General Election. And the Due Process claim fails because Plaintiffs have not asserted any specific allegations supporting their conclusory claim that alleged "errors . . . created by the [State] Board" will lead to the invalidation of any ballots in the General Election. Am. Compl. ¶ 142.

### C. Plaintiffs' Position

Plaintiffs have asked that this letter state their position, which is as follows:

> Given that Plaintiffs have already asked the Court for leave to amend to eliminate any reasonable question on standing (*see* ECF No. 110), their request remains pending (*see* ECF No. 111), and in the interest of not filing excess papers, Plaintiffs ask the Court to treat the request as renewed before addressing Defendants' proposed motion, given the clear directive that leave to amend should be sought "before the second exchange of letters." Rule III(B)(ii) (emphasis in original).

### D. Proposed Briefing Schedule

The State Defendants propose a briefing schedule in line with the established briefing schedule for Plaintiffs' second motion for a preliminary injunction, (ECF No. 105), as follows: (1) by October 2, 2020, the State Defendants shall file a single brief in support of their motion to dismiss and in

Hon. Analisa Torres
September 25, 2020
Page 5

opposition to Plaintiffs' second motion for a preliminary injunction; (2) by October 9, 2020, Plaintiffs shall file a single brief in opposition to the motion to dismiss and in reply in further support of their second motion for a preliminary injunction and motion to file a second amended complaint; and (3) by October 16, 2020, the State Defendants shall file their reply in further support of the motion to dismiss.

      Thank you for your time and consideration of these matters.

                                      Respectfully submitted,

                                      /s/ Owen T. Conroy
                                      Owen T. Conroy
                                      Assistant Attorney General

cc: All counsel of record (via ECF)