USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/23/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

EMILY GALLAGHER, SURAJ PATEL, KATHERINE STABILE, JILLIAN SANTELLA, AARON SEABRIGHT, JAMES C. MCNAMEE, KRISTIN SAGE ROCKERMAN, MARIA BARVA, MIRIAM LAZEWATSKY, MYLES PETERSON, SAMANTHA PINSKY, CHRISTIAN O'TOOLE, TESS HARKIN, CAITLIN PHUNG, ANTONIO PONTÓN-NÚÑEZ, *individually and on behalf of all others similarly situated*,

      Plaintiffs,

-against-

NEW YORK STATE BOARD OF ELECTIONS; PETER S. KOSINSKI, ANDREW SPANO, AND DOUGLAS KELLNER, *individually and in their official capacities as Commissioners of the New York State Board of Elections*; TODD D. VALENTINE, ROBERT A. BREHM, *individually and in their official capacities as Co-Executive Directors of the New York State Board of Elections*; *and* ANDREW CUOMO *as Governor of the State of New York*,

      Defendants.

MARIA D. KAUFER and ETHAN FELDER,

      Plaintiff-Intervenors,

-against-

NEW YORK STATE BOARD OF ELECTIONS; PETER S. KOSINSKI, ANDREW SPANO, AND DOUGLAS KELLNER, *individually and in their official capacities as Commissioners of the New York State Board of Elections*; TODD D. VALENTINE, ROBERT A. BREHM, *individually and in their official capacities as Co-Executive Directors of the New York State Board of Elections*; *and* ANDREW CUOMO *as Governor of the State of New York*; NEW YORK CITY BOARD OF ELECTIONS; PATRICIA ANNE TAYLOR *individually and as President of the New York City Board of Elections*;

20 Civ. 5504 (AT)

**<u>ORDER</u>**

and MICHAEL J. RYAN, *individually and as the Executive Director of the New York City Board of Elections*,

Defendants.

ANALISA TORRES, District Judge:

This action challenges the constitutionality of the New York Election Law which requires that mail-in absentee ballots be postmarked. N.Y. Elec. Law § 8-412(1). Plaintiffs pursued a similar challenge in the aftermath of New York's June 23, 2020 primary election (the "June 23 Primary"), when errors by the United States Postal Service (the "USPS") caused thousands of timely-cast ballots to arrive without postmarks or with postmarks applied too late. ECF No. 91. On August 3, 2020, the Court granted Plaintiffs' motion for a preliminary injunction with respect to that election (the "August 3 Order") and directed the Commissioners of the New York State Board of Elections (the "NYSBOE") to order all local boards of elections ("Local Boards") to count certain absentee ballots cast in the June 23 Primary. *Id.*

With the November 3, 2020 general election (the "General Election") approaching, Plaintiffs now move to expand the scope and breadth of the August 3 Order. Plaintiffs ask the Court to: (1) extend the order to cover all upcoming elections; (2) direct the NYSBOE to require Local Boards to send out absentee ballot applications and ballots promptly upon request; and (3) direct the NYSBOE to require Local Boards to count all otherwise valid absentee ballots without regard to whether they are postmarked. Alternatively, Plaintiffs request that the Court order the NYSBOE to require Local Boards to provide voters a pre-rejection notice for absentee ballots with a late or missing postmark, and an opportunity to cure the defect by affidavit. In addition, Plaintiffs seek leave to file a second amended complaint adding Alessandra Biaggi as a plaintiff.

For the reasons stated below, Plaintiffs' request to file a second amended complaint is GRANTED. The motion to expand the injunction is DENIED.

**BACKGROUND**

I.      Plaintiffs and Non-Party Declarants

On September 11, 2020, Plaintiffs filed a first amended complaint naming thirteen New York State voters: Maria Barva, Tess Harkin, James McNamee, Miriam Lazewatsky, Myles Peterson, Caitlin Phung, Kristin Sage Rockerman, Samantha Pinsky, Antonio Pontón-Núñez, Jillian Santella, Aaron Seawright, Katherine Stabile, and Christian O'Toole. FAC ¶¶ 13–25, ECF No. 109. Each voted by absentee ballot in the June 23 Primary and mailed their ballots on June 22 or 23, 2020. *Id.* Nine of the voters nonetheless had their ballots preliminarily invalidated due to an untimely postmark, and two had their ballots rejected in the final count. *Id.* One, Lazewatsky, does not know whether her ballot was invalidated. *Id.* ¶ 19; Lazewatsky Decl. ¶¶ 5–6, ECF No. 127.[1] Although she acknowledges that it would be safer to vote by mail during the COVID-19 pandemic, she is concerned that her vote will not be counted in the General Election, and plans to vote in person. Lazewatsky Decl. ¶ 7. With the exception of Lazewatsky and Santella (who says she is unsure whether she will vote by absentee ballot, FAC ¶ 14; Santella Decl. ¶ 9, ECF No. 128), the remaining voters do not indicate whether they intend to cast their ballots by mail in the General Election.

Two candidates in the June 23 Primary, Emily Gallagher and Suraj Patel, are also plaintiffs. FAC ¶¶ 11–12. Gallagher, a candidate for the State Assembly, won her primary race, and will be on the ballot in the General Election without an opponent. FAC ¶ 11. Patel, who was seeking the Democratic Party's nomination for a seat in the House of Representatives, has conceded defeat. FAC ¶ 12. In their second amended complaint, Plaintiffs seek to add State Senator Alessandra Biaggi as a plaintiff. SAC ¶ 12, ECF No. 110-1. Biaggi will be on the ballot

---

[1] Plaintiffs Lazewatsky and Santella also submit declarations in support of this motion to expand the August 3 Order. ECF Nos. 127–128.

in the General Election, running in a contested race for a second term in New York's 34th Senate District, which encompasses portions of Bronx and Westchester Counties. SAC ¶ 12; Pl. Mem. at 12, ECF No. 112-1.

In addition to the allegations of the plaintiffs in the first amended complaint and Santella's and Lazewatsky's declarations, Plaintiffs submit declarations from eight other similarly-situated voters, who are not named in the first amended complaint but whom the Court treats as non-party declarants: Rosanne Kennedy, Irene Nielson, Stephen Nielson, Andrew Todd, Heather Kabakoff, Olivia Lapeyrolerie, Madison Stephens, and Jonathan Macagba. ECF Nos. 118–25. These New York City voters describe their experience with submitting absentee ballots in the June 23 Primary. They attest that they mailed their absentee ballots on June 22 or 23, yet their ballots were invalidated for untimely postmarks. ECF Nos. 118–25. Kabakoff, Lapeyrolerie, and the Nielsons mailed their ballots at various times on June 22, but their ballots bear a postmark date of June 25, representing a three-day delay in the postmarking process (at least for Lapeyrolerie and the Nielsons, who aver that they mailed their ballots in the morning).[2] ECF Nos. 122–23, 119–20. Kennedy, Macagba, Stephens, and Todd mailed their ballots at various times before noon on June 23, but their ballots bear a postmark date of June 25, representing a two-day delay in the postmarking process. ECF Nos. 118, 125, 124, 121.

Several of these non-party declarants express disappointment and concern that their ballots were invalidated, despite their following state and local mandates. *See* Todd Decl. ¶ 9, ECF No. 121 ("I worry that our system may, instead, be one where my vote truly, and in this case, literally doesn't matter."); Lapeyrolerie Decl. ¶ 10, ECF No. 123 ("As a Black Woman,

---

[2] According to Michael Calabrese, Manager of the USPS Morgan Processing and Distribution Center, if mail is placed in a mailbox or brought to the post office before final pickup time (usually 5:00 p.m.), it is supposed to receive a same-day postmark. Aug. 3 Order at 8–9.

4

many people have died for my right to vote. It is *incredibly* upsetting to discover my vote wasn't counted, despite following all the rules and mailing my ballot in before the deadline." (emphasis in original)); Kabakoff Decl. ¶ 11, ECF No. 122 ("It is very upsetting to learn that my vote was not counted, despite my demonstrated effort to perform all the steps needed to fulfill my civic duty.").

II.     Changes to New York Absentee Voting

After the June 23 Primary, the New York State Legislature enacted various laws modifying absentee voting processes and procedures. The election laws were amended to allow voters to apply for absentee ballots more than 30 days before election day. 2020 Sess. Laws of N.Y. Ch. 138 (A.10807). The election laws were further modified to require Local Boards to inform absentee voters if their ballot envelope contains certain technical deficiencies, and provide voters an opportunity to cure such defects. 2020 Sess. Laws of N.Y. Ch. 141 (S.8370-B). This provision also mandates timely notice of rejection of a ballot envelope. *Id*. In addition, the election laws now permit Local Boards to count absentee ballots that arrive at their offices on the day after election day, even if such ballots are missing a postmark. 2020 Sess. Laws of N.Y. Ch. 140 (S.8799-A). Under existing law, Local Boards must count all absentee ballots received between two and seven days after election day, so long as such ballots are postmarked by election day. N.Y. Elec. Law § 8-412(1).

Separately, Governor Andrew M. Cuomo issued executive orders relating to the General Election. Executive Order 202.58 requires Local Boards to send voters information about early voting, absentee voting, and in-person voting in the General Election, among other things. N.Y. Exec. Order 202.58 (Aug. 24, 2020). This Executive Order also mandates the design of a new, uniform absentee ballot for statewide use. *Id*. Executive Order 202.61 directs Local Boards to

develop a system that permits voters to drop off completed absentee ballots at a Local Board, early voting location, or election day voting location, without waiting in line with in-person voters.  N.Y. Exec. Order 202.61 (Sept. 9, 2020).

The NYSBOE announced that it will place designated dropboxes at its borough offices, early voting locations, and election day voting locations.  *See Early Voting and Absentee Voting by Mail or Dropbox*, N.Y. State, https://www.ny.gov/early-voting-and-absentee-voting-mail-or-dropbox (last visited Oct. 23, 2020).  In addition, the New York City Board of Elections (the "NYCBOE") and other Local Boards, have developed a web-based ballot tracking system, which permits voters to obtain information about the status of their absentee ballot applications and ballots.  *Absentee Tracking*, Bd. of Elections in the City of N.Y., https://nycabsentee.com/tracking (last visited Oct. 23, 2020).

> III.    General Election and Future Elections

Plaintiffs allege that recent operational changes implemented by the USPS have slowed mail delivery and threaten to jeopardize voting by absentee ballot.  FAC ¶¶ 96–97.  They claim that the changes in postal service standards have already resulted in a two-day delay in all mail in some parts of New York State and have broadly delayed the application of postmarks to first class mail.  *Id.* ¶¶ 99–100.  As a result, Plaintiffs argue, a ballot is now even less likely to receive a postmark that accurately reflects the date that a voter placed the ballot in a mailbox than it was in June.  *Id.* ¶ 101.

Indeed, since the June 23 Primary, changes to USPS standards and policies have been challenged in numerous federal lawsuits.  Courts across the country have enjoined efforts by the postal service to alter the classification of election mail, limit overtime pay for its workers, prohibit additional mail delivery trips, and remove high-speed sorting machines.  *See Vote*

*Forward v. DeJoy*, No. 20 Civ. 2405, 2020 WL 5763869, at *1 (D.D.C. Sept. 28, 2020) (enjoining new USPS policy prohibiting late and extra mail delivery trips); *Pennsylvania v. DeJoy*, No. 20 Civ. 4096, 2020 WL 5763553, at *1–2 (E.D. Pa. Sept. 28, 2020) (enjoining new postal service policies prohibiting late and extra mail delivery trips and restricting overtime); *New York v. Trump*, No. 20 Civ. 2340, 2020 WL 5763775, at *2–3, *13 (D.D.C. Sept. 27, 2020) (enjoining the USPS from removing 671 high-speed sorting machines, prohibiting late and extra mail delivery trips, limiting mail carriers to sorting mail in the afternoon only, and changing the classification of election mail); *Jones v. U.S. Postal Service*, No. 20 Civ. 6516, 2020 WL 5627002, at *28 (S.D.N.Y. Sept. 21, 2020) (mandating that the postal service treat all election mail as first-class mail and approve overtime requests to ensure timely delivery of absentee ballots); *Washington v. Trump*, No. 20 Civ. 3127, 2020 WL 5568557, at *6 (E.D. Wash. Sept. 17, 2020) (enjoining the USPS from instructing mail carriers to leave mail behind for processing at a later date, requiring mail carriers to leave at set times, and prohibiting return trips to distribution centers).

According to Plaintiffs, the postal service has not indicated that it will remedy the failures which marred the June 23 Primary, making an accurate vote count unlikely in the General Election and moving forward. FAC ¶¶ 93–97, 103–104. Plaintiffs also allege that New York State has all but conceded, in other litigation, that the same postmarking and delivery problems that occurred in the June 23 Primary will continue to plague mail-in voting. *Id.* ¶ 98. They claim, therefore, that the combination of (1) New York's requirement that ballots arriving at a Local Board two to seven days after election day bear a postmark dated no later than election day and (2) the USPS's substandard performance will result in disenfranchisement. *Id.* ¶¶ 101–105.

Plaintiffs further contend that the NYCBOE has failed to implement remedial measures which will prevent a repeat of its poor performance in the June 23 Primary. *Id*. ¶¶ 106–111. As an example, Plaintiffs reference an August 4, 2020 memorandum from NYSBOE Commissioner Douglas Kellner to the NYCBOE, which outlines steps that he believes the NYCBOE must take to prevent absentee ballot invalidation in the General Election, including strict deadlines for the processing of absentee ballot applications. *Id.* According to Plaintiffs, Local Boards have not adopted Commissioner Kellner's recommendations. *Id*. ¶¶ 109–110. As a result, New York City experienced a backlog in the processing of such applications. *Id*. ¶ 111.

## DISCUSSION

I. Second Amended Complaint

Plaintiffs seek leave to file a second amended complaint to add Alessandra Biaggi as a plaintiff. SAC ¶ 12; Pl. Mem. at 12. Biaggi represents the 34th Senate District in the State Senate, and is on the General Election ballot, running for a second term. SAC ¶ 12. Unlike Gallagher, Biaggi will be running in a contested race. ECF No. 110 at 1.

Leave to amend a complaint "shall be freely given when justice so requires," and it is "within the sound discretion of the district court to grant or deny leave to amend." *See McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007) (internal quotation marks omitted). Although Defendants argue that the second amended complaint would be futile, Defendants have failed to show the presence of any other countervailing factors, such as "bad faith, undue delay, or undue prejudice to the opposing party." *Id*. (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).

Accordingly, Plaintiffs' request for leave to amend the complaint is GRANTED.

II.     Standing

"Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolving the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013) (internal quotation marks and citation omitted). The "Constitution requires that anyone seeking to invoke federal jurisdiction . . . have standing to do so." *Crist v. Comm'n on Presidential Debates*, 262 F.3d 193, 194 (2d Cir. 2001); *see Genesis Healthcare Corp.*, 569 U.S. at 71 ("In order to invoke federal-court jurisdiction, a plaintiff must demonstrate that he possesses a legally cognizable interest, or personal stake, in the outcome of the action." (internal quotation marks and citation omitted)). "To satisfy Article III, a party must demonstrate an 'injury in fact'; a causal connection between the injury and the conduct of which the party complains; and that it is 'likely' a favorable decision will provide redress." *Kowalski v. Tesmer*, 543 U.S. 125, 129 n.2 (2004) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Plaintiffs contend that they have standing because (1) the Court already made that finding in the August 3 Order, and (2) the same injuries to their constitutional rights will recur without the Court's intervention. Pl. Mem. at 5. But "standing is not dispensed in gross," *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017) (internal quotation marks and citations omitted).

Courts generally determine standing based on the facts that exist when a complaint is filed. *See Lower E. Side People's Fed. Credit Union v. Trump*, 289 F. Supp. 3d 568, 579–80 (S.D.N.Y. 2018). However, at each stage of the litigation, "the party invoking federal jurisdiction bears the burden of establishing the elements of Article III standing." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (internal alterations omitted). And a

party invoking federal jurisdiction "bears the burden of showing that [it] has standing for each type of relief sought." *Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009); *see also Salazar v. Buono*, 559 U.S. 700, 731 (2010) (Scalia, J., concurring in the judgment) ("A plaintiff cannot sidestep Article III's requirements by combining a request for injunctive relief for which he *has* standing with a request for injunctive relief for which he *lacks* standing. And for the same reason, a plaintiff cannot ask a court to expand an existing injunction unless he has standing to seek additional relief." (emphasis in original)). Thus, although Plaintiffs had standing when this Court issued the August 3 Order, that alone is not sufficient to confer standing for the new relief sought.

Plaintiffs' second amended complaint concerns events—changes in postal service standards—that occurred after the August 3 Order was issued. SAC ¶¶ 3, 94–116. When the Court handed down the August 3 Order, Plaintiffs had identified ballots that had been invalidated. ECF No. 3-1 at 12; ECF No. 61-2 (summary of non-postmarked ballots). At that time, Gallagher was at risk of taking office without a clear mandate because some absentee ballots cast in her election were not counted. Aug. 3 Order at 13, 19. Similarly, Patel was losing his race by a narrow margin, and the invalidated ballots could have moved him closer to victory. *Id*. at 13, 18. The voter Plaintiffs had already voted by mail, but through no fault of their own, faced the risk of having their absentee ballots invalidated for lack of a timely postmark. *Id.* at 13–14.

But Plaintiffs now bring *new* claims regarding post-injunction changes in USPS practices and seek new relief affecting the General Election. Accordingly, the Court must undertake a fresh assessment of whether they have standing for those claims and the form of relief sought.

A. Voter Plaintiffs' and Candidate Plaintiffs' Standing

New York Election Law § 8-412 provides that Local Boards must count all absentee ballots received two to seven days after election day, so long as such ballots are postmarked by election day. N.Y. Elec. Law § 8-412(1). Plaintiffs argue that the provision's postmark requirement has caused, and will in the future cause, several categories of harm. First, a subset of voter Plaintiffs suffered an injury in fact when their rights under the First and Fourteenth Amendments to the United States Constitution were violated because their votes were not counted in the June 23 Primary. Pl. Mem. at 7; Aug. 3 Order at 37, 42–43. Second, the candidate Plaintiffs will be injured if Local Boards reject timely-cast ballots that do not receive a timely postmark, resulting in an inaccurate vote count. Pl. Mem. at 6–7. Third, voter Plaintiffs[3] are at risk of future harm because the postmark requirement, coupled with the postal service's failure to timely postmark and deliver absentee ballots, could cause mail-in ballots to be unlawfully rejected, resulting in the abridgement of voters' rights under the First and Fourteenth Amendments to the United States Constitution. Pl. Mem. at 7–9.

The injury-in-fact requirement "ensure[s] that the plaintiff has a personal stake in the outcome of the controversy." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (internal quotation marks and citation omitted). A future injury can satisfy this requirement if it is "certainly impending, or there is a substantial risk that the harm will occur." *Id.* at 157 (internal quotation marks and citation omitted). A plaintiff is not required to "demonstrate that it is literally certain that the harms they identify will come about." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). But, a party "cannot rely solely on past injuries; rather, the plaintiff must establish how he or she will be injured prospectively and that the injury would be

---

[3] This set of voters does not include Lazewatsky, whose standing shall be discussed *infra* § II.B.

11

prevented by the equitable relief sought." *Marcavage v. City of New York*, 689 F.3d 98, 103 (2d Cir. 2012).

Here, Plaintiffs cannot satisfy the injury-in-fact requirement because they do not allege "concrete, particularized, and actual or imminent" harm. *Clapper*, 568 U.S. at 409. Instead, they postulate that injuries they may have suffered as a result of the June 23 Primary make future harm likely.

But the voter Plaintiffs have not adduced any facts showing that their ballots face a meaningful risk of not being counted. Most obviously, none of them has alleged that he or she intends to cast an absentee ballot *by mail*. *See* SAC ¶¶ 14–26; *see also* Santella Decl. ¶ 9 (Voter Santella is "still deciding" how to vote in November). They might decide to drop off their ballots at an early voting site beginning on October 24, at a poll site on election day, or at their Local Board's office by 9:00 p.m. on election day. *Early Voting and Absentee Voting by Mail or Dropbox*, NY.Gov, https://www.ny.gov/early-voting-and-absentee-voting-mail-or-dropbox (last visited Oct. 23, 2020). The voter Plaintiffs might also mail their ballots far in advance of election day to ensure that they arrive at their Local Board before election day, avoiding the application of the postmark requirement altogether. To be sure, New York law allows voters to forego all of these alternatives, and to mail in an absentee ballot on any day up to election day. But the voter Plaintiffs have produced no evidence that they will mail in their ballots, much less that they will do so in the days immediately before election day. And the non-party declarants do not say how they will cast their ballots in the General Election. ECF Nos. 118–125. None of these voter Plaintiffs, therefore, have shown that they face a substantial risk of being injured by New York's postmark requirement.[4]

---

[4] Because neither the Plaintiffs nor the non-party declarants attest that they will mail in their absentee ballots, Plaintiffs' attempt to analogize to cases holding that a party can establish the likelihood of future injury with

Gallagher and Patel, the candidate Plaintiffs, do not fare much better. Patel is not on the ballot in November, and consequently does not have a legally protected interest in the vote count in the General Election. Gallagher is on the ballot, which gives her an interest (albeit a diminished one, given that her race is uncontested) in making sure the votes cast in her race are accurately counted. *See* Aug. 3 Order at 18–19. There is no evidence, however, that the postmark requirement will lead to any significant invalidation of ballots in Gallagher's race. To the contrary, recently adopted laws and policies make the injuries less likely: voters were permitted to request ballots as early as August 20, 2020, 2020 Sess. Laws of N.Y. Ch. 138 (A.10807); absentee envelopes will not have prepaid postage, N.Y. Exec. Order 202.26 (May 1, 2020); Local Boards are now required to inform voters if their absentee ballots contain certain technical defects and provide an opportunity to cure them, 2020 Sess. Laws of N.Y. Ch. 141 (S.8370-B); and any ballot received the day after the election will be counted, regardless of whether it is postmarked, 2020 Sess. Laws of N.Y. Ch. 140 (S.8799-A). And again, voters who intend to vote by absentee ballot in the General Election can now utilize methods that do not depend on mail delivery, such as dropping off ballots at early voting sites, at poll sites on election day, or at their Local Board. N.Y. Exec. Order 202.61 (Sept. 9, 2020).

Even considering the fact that Biaggi will be running in a contested race in the General Election, Plaintiffs' anticipated injuries amount to no more than speculation. Plaintiffs' evidence does not show any likelihood that USPS failings will affect Biaggi's race, especially because there is no proof that the systemic postal service snags that existed in Brooklyn, Queens, and Manhattan in connection with the June 23 Primary, Aug. 3 Order at 14–16, also affected Biaggi's

---

statistical evidence is misguided. *See* Pl. Mem. at 5, 7–9; *see e.g.*, *Floyd v. City of New York*, 283 F.R.D. 153, 170 (S.D.N.Y. 2012) (finding that statistical evidence of at least 60,000 unconstitutional stops over six years indicated a likelihood of future injury).

13

senate district, which stretches across Bronx and Westchester Counties. *See* SAC ¶ 12. In fact, in another lawsuit in which Biaggi is a plaintiff, a court in this district has ordered thoroughgoing changes to USPS practices designed to prevent such problems. *Jones*, 2020 WL 5627002, at *28.

Plaintiffs' reliance on other cases where courts have held that future harm was imminent on the basis of past injuries is misplaced. *See* Pl. Mem. at 8–9. Plaintiffs point to cases where defendants continued to apply the same policy that had caused harm in the past, with predictable results. *See Frederick v. Lawson*, No. 19 Civ. 1959, 2020 WL 4882696, at *8 (S.D. Ind. Aug. 20, 2020) (finding injury where plaintiffs presented evidence of their votes being disallowed in 2018 by the same law they were challenging in 2020); *League of Women Voters of the United States v. Newby*, 838 F.3d 1, 8–9 (D.C. Cir. 2016) (finding harm likely in Georgia and Alabama where there was evidence Kansas had caused injury by applying the same policy); *Floyd*, 283 F.R.D. at 169–170 (finding standing where the court could predict future harm based on statistical evidence of the number of past police stops). By contrast, New York has implemented several reforms to the process of mail-in voting since the June 23 Primary, which are directly targeted at avoiding that election's pitfalls. 2020 Sess. Laws of N.Y. Ch. 138 (A.10807); 2020 Sess. Laws of N.Y. Ch. 140 (S.8799-A); 2020 Sess. Laws of N.Y. Ch. 141 (S.8370-B); N.Y. Exec. Order 202.61 (Sept. 9, 2020). The USPS, too, has reformed its practices in key ways—and because many of its reforms are the result of judicial orders, the postal service's performance in the coming weeks will be subject to judicial oversight. *See Vote Forward*, 2020 WL 5763869, at *1; *Pennsylvania v. DeJoy*, 2020 WL 5763553, at *1–2; *New York v. Trump*, 2020 WL 5763775, at *2–3, *13; *Jones*, 2020 WL 5627002, at *28; *Washington v. Trump*, 2020 WL 5568557, at *6. Moreover, as the Court explained in the August 3 Order, it appears that the injuries that Plaintiffs

suffered in the June 23 Primary arose from a narrow set of errors at New York City's central mail processing facility. Aug. 3 Order at 10, 39. Plaintiffs have not demonstrated with any certainty that similar mistakes will occur in the General Election. The Court, therefore, cannot rely on evidence of harm caused by past practices to project the risk of future injuries in light of this record. *New York v. Trump*, 20 Civ. 5770, 2020 WL 5422959, at *15 (S.D.N.Y. Sept. 10, 2020).

For the same reasons, the harm caused by "dally[ing] in sending absentee ballots to voters" is not sufficiently certain or imminent. Pl. Mem. at 9. The allegation that the postmark rule will disenfranchise voters based on when they receive their absentee ballots without any evidence of a backlog, after changes to New York's election laws allowing voters to request ballots earlier than they could before the June 23 Primary, 2020 Sess. Laws of N.Y. Ch. 138 (A.10807), and when voters now have alternative means to cast their vote if their absentee ballot arrives too late, N.Y. Exec. Order 202.61 (Sept. 9, 2020), is overly speculative.

The Court concludes, therefore, that voter Plaintiffs Barva, Harkin, McNamee, O'Toole, Peterson, Phung, Pinsky, Pontón-Núñez, Rockerman, Santella, Seawright, and Stabile, and the candidate Plaintiffs, lack standing to expand the August 3 Order to the General Election because they cannot, at present, demonstrate injury in fact. The Court also rejects Plaintiffs' argument that the addition of Biaggi as a plaintiff confers standing because her anticipated injuries are likewise speculative.

### B. Lazewatsky's Standing

Unlike the other Plaintiffs, Lazewatsky has made a settled decision to vote in person in the General Election, and her alleged harm stems from her risk of contracting the COVID-19 virus based on that decision. Pl. Mem at 9. She states that, rather than take the chance that her

mail-in ballot will not be counted, as she suspects it was not in the June 23 Primary, she will vote in person despite the pandemic. Lazewatsky Decl. ¶¶ 5–7. Even assuming Lazewatsky has established injury in fact from the increased risk of coronavirus infection during in-person voting, the Court concludes she has not established traceability and redressability.

First, Lazewatsky cannot trace her alleged harm to Defendants' acts or failure to act. Where a government agency's action (or inaction) has a "predictable effect" on the decisions of an individual—such as those of Lazewatsky—the effect on those decisions can be traceable to that agency, even when those decisions are "illogical or unnecessary." *New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d 42, 59 (2d Cir. 2020) (internal quotation marks and alterations omitted). Here, Plaintiffs appear to argue that the NYSBOE's failure to implement certain voting reforms for the General Election had a predictable effect on Lazewatsky's decision to vote in person, given the mishaps of the June 23 Primary. *See* Pl. Reply at 8, ECF No. 133; Pl. Mem. at 4–5. In other words, the failure to adopt reforms would predictably cause Lazewatsky to decide to risk contracting the COVID-19 virus by voting in person to ensure that her ballot is counted. Pl. Reply at 8.

The record does not support that assertion. Lazewatsky does not connect her choice to vote in person to Defendants' conduct with respect to the General Election, but rather to their failure to act in connection with the June 23 Primary: she attests that she is "uncertain whether [her] ballot was counted in the June 23 . . . [P]rimary" and is "worried [her] vote won't be counted if [she] use[s] an absentee ballot for the [General E]lection," compelling her to choose in-person voting for the General Election. Lazewatsky Decl. ¶¶ 5, 7.

But since the June 23 Primary, Defendants have created a number of new means of voting that do not involve mailing in an absentee ballot or voting in person in the General

16

Election—means which Plaintiffs challenge as insufficient. Based on Executive Order 202.61 (Sept. 9, 2020), Lazewatsky could drop off her ballot at a designated dropbox, at an early voting location, or at an election day voting location. Def. Opp'n at 8, ECF No. 130. All of these options would allow Lazewatsky to avoid the greater risk of contracting COVID-19 posed by in-person voting. In her declaration, Lazewatsky does not reject these alternative methods—she makes no mention of them. *See* Lazewatsky Decl. Thus, the record contains no evidence of the predictable response to these reforms. The Court cannot conclude, therefore, that Lazewatsky's decision to vote in person—thereby elevating her risk of contracting COVID-19—is fairly traceable to Defendants' failure to adopt the reforms Plaintiffs argue should have been put in place after the June 23 Primary, or any action Defendants took with respect to the General Election.

The caselaw relied on by Plaintiffs is distinguishable. For instance, in *Jones v. United States Postal Service*, a plaintiff stated that the "slowdown of mail at the USPS"—caused by the agency action challenged in the lawsuit—made her "very concerned about whether a [mail-in] ballot . . . would arrive on time" and, as a result, she planned to vote in person. Spencer Decl., No. 20 Civ. 6516, ECF No. 38-5 ¶¶ 5–6. There, that plaintiff's clear statement that the postal service's actions would lead her to vote in person supported the court's holding that her decision was evidence of the predictable response to that agency's action. *Jones*, 2020 WL 5627002, at *12 ("[T]he mail delays will predictably force some citizens—such as plaintiff Shannon Spencer—to vote in person and potentially suffer harm in the form of exposure to COVID-19."); *see also New York v. U.S. Dep't of Homeland Sec.*, 969 F.3d at 59 (holding that the effect of the Department of Homeland Security's action on undocumented immigrants was predictable because the agency articulated those predictions in other documents); *New York v. Trump*, 2020

WL 5422959, at *20–21 (holding that seven declarations directly attributing individuals' decisions not to participate in the census based on defendant's actions was evidence of traceability).[5]  Lazewatsky, however, states that her decision to vote in person is based on the mishaps of the June 23 Primary, and *not* specifically in response to the reforms, or lack thereof, implemented for the General Election.

Second, Lazewatsky also does not satisfy the redressability requirement of standing. *Davis v. FEC*, 554 U.S. 724, 733 (2008) (noting that the third requirement of standing is that the requested relief is "likely to be redressed by a favorable ruling").  Most importantly, she does not attest that she will request and cast an absentee ballot by mail should the requested relief be granted.  *See generally* Lazewatsky Decl.  In fact, she avers that she will vote in person no matter what.  *Id.* ¶ 7.  Therefore, she cannot show that a favorable ruling from this Court will redress her alleged harm.

The Court concludes, therefore, that along with the other Plaintiffs, Lazewatsky lacks standing.

Accordingly, Plaintiffs' motion to expand the preliminary injunction is DENIED.

---

[5] Plaintiffs also cite *Black Voters Matter Fund v. Raffensperger*, No. 20 Civ. 1489, 2020 WL 4597053 (N.D. Ga. Aug. 11, 2020). Pl. Mem. at 9.  However, the court there did not opine on whether a plaintiff, who chose to risk COVID-19 by planning to vote in person rather than by mail, had standing.  Instead, the court rested its holding on another plaintiff's organizational standing.  *Black Voters Matter Fund*, 2020 WL 4597053, at *20.

## CONCLUSION

For the reasons stated above, Plaintiffs' request for leave to amend their complaint is GRANTED and Plaintiffs' motion to expand the preliminary injunction is DENIED.

The Clerk of Court is directed to terminate the motion at ECF No. 110.

SO ORDERED.

Dated: October 23, 2020
      New York, New York

_____
ANALISA TORRES
United States District Judge